### John Beaton et al. v. Robert Tarrant.

1. INJUNCTIONS—*Restraining Strikes by Workmen.*—An injunction restraining workmen engaged in a strike from picketing the establishments of their former employer and gathering in groups in the streets and alleys in the neighborhood of or in front of his shops and calling his employes scabs and other vile names and threatening them with personal injury, is proper and is sustained.

**Bill for an Injunction.**—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge presiding. Heard in this court at the March term, 1902. Affirmed. Opinion filed May 22, 1902.

**Statement.**—Appellee is a manufacturer in Chicago, Illinois, employing about one hundred men and having $100,000 invested in his plant.

Appellants are known as union machinists, and are members of the International Association of Machinists. In May,

1901, the union machinists in Chicago struck, and all the members of that order in the employ of appellee went out. Because of this appellee was compelled to cancel certain existing orders and to refuse other contracts. July 29, 1901, his workmen voluntarily returned. The strike continued as to the Allis-Chalmers Company. Appellee then had but little work for his men. In order to provide employment for them, he took a contract from the Allis-Chalmers Company. The men went to work on that job, and willingly continued to do so until August 29, 1901, when appellant Ireland told appellee that if he did not take his men off the Allis-Chalmers Company contract, he, Ireland, would order the union machinists employed in appellee's shop to strike. Appellee refused to comply with this demand, and on August 3, 1901, Ireland ordered the union machinists to leave appellee's shop. Fourteen of them at once obeyed this order. His shop from that time to the date of the filing of the bill herein was picketed by appellants and by men employed by them. The bill then sets up many specific acts done by appellants to the financial injury of appellee, which need not be now and here set forth in detail.

The bill prayed for an injunction restraining appellants from interfering with his business, from inducing workmen by threats to leave his employment or not to enter his employ, and from picketing his place of business.

Appellee made a motion for a temporary injunction and supported the same by many affidavits. Appellants resisted such motion and sustained their contention in like manner. The chancellor, after a full hearing, granted a temporary injunction.

The appeal in this case is from that restraining order.

HORNSTEIN & COITH, attorneys for appellants.

ROBERTS & ROBERTS, attorneys for appellee; JOHN W. BECKWITH, of counsel.

MR. JUSTICE BALL delivered the opinion of the court.
Appellants, in an appendix to their brief, have favored us

with the opinion of the learned chancellor who heard this case and who entered the restraining order herein. A careful reading of the record, in the light of history and a knowledge of human nature, convinces us that the finding of facts set forth in such opinion is clearly sustained by the preponderance of the evidence; and we therefore adopt the same as to such facts:

"In support of the motion for a temporary injunction complainant presents numerous affidavits from which it appears that no acts of physical violence have been committed by the defendants, and that picketing has been employed to carry out their purposes and enforce their demands. It appears from these affidavits that pickets, consisting of groups of persons, varying in number from five to fifteen persons, have daily gathered in the streets and alleys in the neighborhood of or in front of complainant's shop, and in the alleys and in the rear of and near the approaches and entrances of said shop, and at all times of the day walk up and down the sidewalks and congregate in the vicinity of and around said shop, stop complainant's men while going to and from work, and when alone surround them, call them 'scabs,' and vil enames, and threaten them with personal injury. Five of complainant's employes swear that they have been so frightened by the acts, threats, pursuit and conduct of the pickets and persons accompanying them that they have been compelled to quit complainant's service and dare not return for fear of personal violence, and these men, as to the facts and cause of their leaving, are corroborated by the affidavit of complainant.

"Frank Vallet swears that he was in complainant's employ one month; that October 23d he was accompanied home by Sam Rose, also a machinist in complainant's employ; that one Carl Woltschloger, one of the pickets, and another person, followed them to Vallet's boarding house; that Woltschloger said, 'We are only arguing with you now, but, by G–d, if you don't quit Tarrant's we will fix you fellows so you can't work;' that October 24th, Woltschloger, in company with another picket, said to Vallet and Rose, 'You G–d d—n scab, you ought to have your face kicked off.' Sam Rose, a machinist formerly in complainant's employ, makes a similar affidavit. Thomas Murray, in complainant's employ, swears that Woltschloger and another man followed him from the shop to his home, and

Beaton v. Tarrant.

when near there Woltschloger said : 'Are you working for Tarrant's ? You are a dirty scab, and if you know what is good for your skin you had better not go back there to work to-morrow morning, you G—d d—n son of a bitch of a scab.' Best, also in complainant's employ, swears he was stopped by four men within fifteen feet of the entrance to complainant's shop, of whom were Wilson and Woltschloger, who surrounded him; called him a G—d d—n scab; that he tried to move on, but the four men doubled up their fists and Wilson and Woltschloger drew back their fists as if to strike, when several of complainant's machinists came out of the shop to Best's assistance, and the pickets stepped away.

"From the affidavit of one of the defendants, Carl Woltschloger, it would appear that all the seven pickets who are patrolling the neighborhood of complainant's plant are peaceably inclined, and that five of them are more than forty-five years old ; that he and other pickets stationed at said plant have carefully avoided any hostile demonstrations; have not made menaces nor threats, nor used vile and abusive language, but that they have only resorted to peaceable means and persuasion; and he specifically denies the language attributed to him by Murray, Vallet, Ross and Best.

"Arthur E. Ireland testifies that he is the business agent of the International Association of Machinists, District Eight; that he was instructed by the executive officers of said association and respectfully requested the complainant not to do work for the Allis-Chalmers Company, and that if he did, the men in his employ would quit; that he persisted in doing such work, and that the strike followed; that the association only regularly employed seven persons for the purpose of picketing complainant's shops, five of whom were more than fifty years old, and the other two temperate and discreet, and that all were instructed not to use violence, but only argument and peaceable persuasion. Coesfield, Singos, Sturreck and Holden, pickets, all swear that violence, intimidation, threats and abusive language had not been used toward complainant's employes and those seeking employment, but that only peaceable means had been employed to induce men to quit work or remain away from complainant's shop; and in this they are corroborated by Quinn and Spears. Keppler, president of District Eight of the International Machinists' Association, swears that only two or three pickets were on duty at any one time, and that no violence was offered, within his

knowledge, and that no strike was called by the officers of the association.

" Notwithstanding the conflict in the evidence, the court is constrained to find, as was ·in fact admitted in some of defendants' affidavits, that a strike was called because the complainant refused to discontinue work on the Allis-Chalmers Company contract; that as a result of this action, which was approved by the executive officers of District Eight, pickets in large numbers were established for the purpose of patrolling the neighborhood in and about complainant's shop, and that crowds gathered in and about the streets, alleys and entrances about complainant's shop, and although no actual physical violence was used, the acts, threats and conduct of said pickets and of the persons accompanying them, were of such a character as were calculated to intimidate a reasonable and prudent man, and it appears that they in fact did intimidate and frighten some of complainant's employes and those who sought his employment. * * * The court notes that so far as the evidence shows, there was on the part of the executive officers of District Eight of the International Machinists' Association a determination to abstain from actual physical violence, but the evidence shows that there was more than argument, inducement and peaceable persuasion in the occurrences set forth, and that the conduct and acts of the pickets and those accompanying them constitute a continuing trespass from which injury and interruption to complainant's business resulted."

The chancellor then states his conclusions of law, as follows :

" The right of workingmen to organize and combine for their own protection, is no longer an open question. They may individually or collectively quit work of an employer and use all peaceable means to induce other workmen to quit, even though the works of the employer in consequence be closed and loss ensue. The law accords to capital the right lawfully to combine, to get for itself as much as it can. It accords to labor the same right. In the determination of what is best for its own protection, the law must give both capital and labor a broad field for action. While the law recognizes the right of lawful organization and combination, it also guarantees and protects the right of every man to his own labor, the absolute right to work for any employer upon any terms he may see fit. On the other hand, the right of the employer to carry on his business in

a lawful way, according to his own choice and judgment, to do and contract to do whatever work he sees fit, is equally well founded.

" With due regard to these correlative rights and duties, the individual and the combination or association have freedom of action. In the case at bar the united determination of the workmen to quit work and induce others to quit and abstain from entering complainant's service, and to strike to accomplish that purpose, did not necessarily become unlawful nor constitute an unlawful conspiracy to injure complainant.

" Workmen may use the streets and highways in a manner not inconsistent with public travel, for the purpose of entreaty, inducement and peaceable persuasion in good faith, and a patrol or picket may not necessarily imply force or a threat of bodily harm; but to accomplish their purpose they may not overstep the bounds and use threats, abusive epithets or intimidation, or congregate in such number or in such manner or with such a show of force, as is calculated to intimidate a reasonable and prudent man, and no harm can result in granting an injunction to restrain such unlawful conduct."

The injunctional order is as follows :

" It is therefore ordered, adjudged and decreed that the said defendants (naming them) be and they are hereby restrained and enjoined from in any manner unlawfully hindering, obstructing or interfering with the business of the complainant, Robert Tarrant, and from compelling or attempting to compel, by use of abuse and indecent language, violence, threats or intimidation of any sort, any person or persons to leave the employment of the complainant, Robert Tarrant, or not to enter his employ if desirous of so doing; and from doing any unlawful act or thing whatsoever by any of the unlawful means or methods aforesaid in furtherance of a wrongful and unlawful purpose to interfere with and obstruct Robert Tarrant in the conduct of his business; and from in any unlawful manner whatever, assisting or abetting any person, company or organization to do or cause to be done any of the unlawful acts aforesaid, and from congregating in large numbers at or near the shop of Robert Tarrant at No. 52 Illinois street, Chicago, Illinois, in such a manner as is calculated to intimidate any employe of Robert Tarrant, or persons seeking employment from him, in going to, remaining at or coming

from the said shop of Robert Tarrant; and from picketing, guarding, obstructing or patrolling the streets, alleys or approaches to the said shop of Robert Tarrant in such a manner as to intimidate, threaten or coerce, by violence or threats of violence, or abusive and indecent language, any of the employes of Robert Tarrant, or person seeking employment of him, and from lawfully interfering with any such persons being in the employ of Robert Tarrant, or on account of their seeking to be employed by him; and from speaking to such persons against their will in an abusive and threatening manner for the purpose of intimidating them."

It then provides for service of this order upon the several lodges named, their officers and members.

Upon the facts as found, the principles of law applicable to the case are so clearly stated by the learned chancellor in his opinion, that nothing need be added thereto. We have come to this conclusion after a careful study of the cases cited by appellants and by appellee. We therefore adopt that opinion, so far as above quoted, as the opinion of the court. The injunctional order will be affirmed.