CITY OF ST. LOUIS, Plaintiff in error, v. JACOB GLONER.

Division Two, March 17, 1908.

1. **LOAFING ON STREET: Personal Liberty: City Ordinance: Unconstitutional.** Loafing, standing and lounging around and about and at certain public street corners, without interfering with the rights of any other person or in any wise engaging in disorderly conduct or disturbing the public peace, is not a public offense, and an ordinance so declaring is an interference with personal liberty, and is unreasonable and oppressive, and to that extent unconstitutional.

2. ———: ———: ———: ———: **Strikers' Picket.** A strike was on and defendant stood at the street corner for two hours for each of several days and requested men not to take the strikers' places. He was engaged in what was termed "strikers' picket duty," which consisted in requesting men not to take the places of strikers. He was not talking to any one, or obstructing the sidewalk, or disturbing the public peace, or engaged in any disorderly conduct. *Held*, that his conviction under an ordinance declaring that "any person who shall lounge, stand or loaf around or about or at street corners or other public places shall be deemed guilty of a misdemeanor," would be invalid, the ordinance itself being invalid as an interference with the personal liberty guaranteed by section 4 of article 2 of the Constitution of this State.

3. ———: **Two Hours: Personal Right.** Any citizen has the right for his own private purposes, whatever they may be, to take his stand for a period of two hours each day upon a particular portion of the public street in a great and populous city, provided he conducts himself in a peaceful, orderly manner, disturbs no one, and commits no overt offense.

Error to St. Louis Court of Criminal Correction.—
*Hon. Hiram N. Moore,* Judge.

AFFIRMED.

*Charles W. Bates* and *Charles P. Williams* for plaintiff in error.

(1) The city of St. Louis is given power by its charter "to construct and keep in repair all bridges, streets, sewers and drains, and to regulate the use thereof." Charter, art. 3, sec. 26, cl. 2. The power which the State primarily has over streets and highways in the State or in any city of the State has in St. Louis been delegated to that city. State ex rel. v. Railroad, 151 Mo. 183. The words "to regulate the use thereof" are of broad import and confer comprehensive power upon the city. Sluder v. Railroad, 189 Mo. 129; St. Louis v. Tel. Co., 149 U. S. 469. In the very nature of things, a city vested with such a power of regulation not only has the right, but it is its duty, to enact meas-

ures prohibiting conduct that tends unreasonably and unnecessarily to obstruct and impede the physical width and freedom of the entire street for purposes of public passage. No member of the body politic has any right to make any use of a public street unless it be such a use as is necessarily involved in and essentially incident to the fair and reasonable use of the street for purposes of passage by him as a member of the public. The city has no power to license occupancy or use of the street for any private purpose whatsoever. State ex. rel. v. Vandalia, 119 Mo. App. 417; Schopp v. St. Louis, 117 Mo. 131; State ex. rel v. St. Louis, 161 Mo. 371; Brown v. Railroad, 137 Mo. 529; Coal Co. v. Coal Co., 62 Mo. App. 93. John Smith, as a member of the public, has no right for his own private purposes, whatever they may be, to take his stand for a period of two hours every day upon a particular portion of the public street in a great and populous city. If John Smith has such a right, then William Jones has an equal right for two or three or four hours to take his stand by the side of John Smith for the purpose of furthering his own particular ends. And if these two have the right, any hundred or thousand others acting not in concert, but each in the individual pursuit of his own purposes, can congregate on the same street corner, or on the same street, with no community of action, and with no community of purpose. The result of these entirely separate and unconnected acts is that the street is impassably blockaded. Now, whatever offense or wrong to the public has been committed under these circumstances, cannot be held as a joint charge against the individuals concerned, because we cannot charge nor prove any concert whatever or any community of purpose or design among the persons whose confluence and gathering together creates the blockade and obstruction. Whatever offense, then, has been committed, is committed by each individual

who undertakes, contrary to the inhibition of the law, to use the street for other purposes than those for which the street was designed and for which it is being maintained by the State and by the city, namely, those necessarily and fairly incident to public passage. It is not so much the purpose with which such an action may be done, as the effect of the act itself, which is intended to be guarded against. The acts of the defendants in this case may have been and probably were directed by a high sense of their duty to themselves and to the cause which they represented, but in their actions they have overstepped, as the evidence plainly shows, their legal rights. (2) The ordinance does not undertake to prohibit a casual stopping or waiting upon the public street or upon a public corner for any temporary purposes connected with and fairly incident to the use of the highway as a means of public passage. The city probably could not undertake to prevent any such use as is fairly incident to or fairly implied in the nature of a street. But the defendants in these cases do not claim to have been making any such use of the public street. For two hours every day for a period of eight or ten days they made the public street and a particular corner thereof the theatre and scene of their own private purposes. They were not in a position therefore to test the question of the reasonableness or unreasonableness, the validity or invalidity, of the ordinance upon the ground suggested above; but even if they were the city clearly has a right, under its power to regulate the use of its streets, to prohibit persons from lounging, standing and loafing around or about street corners. It has the right to prohibit one person from doing this, because if it has not the right to prevent one person, then it has not the right to prevent a hundred persons acting separately and individually and with no concert of action or purpose;

and to take this position would be a rank *reductio ad absurdum.*

*C. J. Anderson* for defendant in error.

(1) The "report of the Chief of Police" on which this action is founded does not state facts sufficient to constitute a cause of action against this defendant. State v. Meyers, 174 Mo. 352; Ex parte Smith, 135 Mo. 232. (2) There was no evidence tending to prove any overt act on the part of defendant, and the finding and judgment of the judge of the court below and his discharge of the defendant should, under the law and the evidence, be sustained. State v. Meyers, 174 Mo. 352; Clothing Co. v. Watson, 168 Mo. 133. (3) The ordinance is unconstitutional in that it evades the right of personal liberty, is unreasonable and oppressive. Secs. 4 and 30, art. 2, Constitution of Mo.; St. Louis v. Roche, 128 Mo. 541; Pinkerton v. Verrberg, 78 Mich. 573.

BURGESS, J.—This was a prosecution under section 1460 of the Municipal Code of the city of St. Louis, which reads as follows:

"Any person who shall, on Sunday or any other day of the week, disturb the peace by any noisy, riotous or disorderly conduct in any park, street, alley, highway, thoroughfare or other public place or public resort for pleasure or amusement or other purposes, or any person or persons who shall lounge, stand or loaf around or about or at street corners or other public places, in the day or night time, or who shall use indecent, loud or profane language on the public street or other public place or who shall purchase or otherwise obtain any beer, wine or spirituous or malt liquors by the measure or in quantities greater than one-half pint, and drink the same upon the public streets, alleys, parks, or other public thoroughfares or places

in the city, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, before either of the police justices, shall be fined in the sum of not less than five or more than fifty dollars. The above provision not to apply to workingmen drinking beer at lunch or dinner at their places of work.''

The information substantially charges that the defendant violated said ordinance on the 4th day of August, 1904, and on divers other days and times prior thereto, by unlawfully lounging, standing and loafing around and about and at certain public street corners and other public places, to-wit, Eleventh street and Washington avenue, in the day and nighttime, in the city of St. Louis.

This case was first tried in one of the police courts of said city, whence an appeal was taken to the St. Louis Court of Criminal Correction.

The testimony tends to show that on August 4, 1904, there was a strike of the employees of the Harris Bros. Clothing Company, whose place of business was at 1128 Washington avenue, in the city of St. Louis, and that defendant and three other strikers were doing what is termed "picket duty" at the corner of Eleventh street and Washington avenue, near the business place of said clothing company.

Officer Pierson, who arrested defendant on said August 4th, testified that he had seen defendant at the corner of Eleventh street and Washington avenue the morning he arrested him, and had seen him there on prior mornings and evenings. The police officer further testified as follows:

''Q. Was he doing anything but standing on the corner? A. No, sir.

''Q. Was he blocking the corner? A. No, sir.

''Q. How wide is the sidewalk there? A. Ten or twelve feet.

"Q. He was standing on the sidewalk on the corner, and you told him to move on? A. Yes, sir.

"Q. He wasn't talking to anyone? A. No, sir.

"Q. There was a strike on, and these men were simply doing what is called picket duty? A. Yes, sir.

"Q. As I understand, picket duty consists in standing around corners and requesting men not to take strikers' places. A. Yes, sir.

"Q. That was what this man was doing as they came from work in the evening? A. Yes, sir.

"Q. In other words, during this time there was nothing in his action that you as a police officer deemed it necessary to arrest him for? A. I watched him for two or three days.

"Q. You made the arrest not because he was obstructing the sidewalk, but because he was doing picket duty? A. Because he was doing picket duty, and I was informed that they must stop it."

The witness further testified that he saw the defendant stop and talk to some of the employees of the company against which the strike was directed. Three other witnesses, employees of the said company, testified to seeing the defendant standing on the street corner several mornings and evenings before the day he was arrested.

At the close of the city's case the defendant moved the court to discharge him, on the ground that the evidence introduced by the city was insufficient to support a conviction, which motion was sustained, and the court rendered judgment discharging the defendant.

Plaintiff filed motion for a new trial, which was overruled by the court. The case is before this court upon a writ of error.

While the city of St. Louis is given power by the second clause of section 26, article 3, of its charter, to regulate the use of its streets, the question here presented is as to whether it had the right, under the pro-

visions of its charter, to pass the ordinance upon which this prosecution is based, and which makes it a misdemeanor, punishable by fine, for any person to lounge, stand or loaf around or about or at street corners or other public places, in the day or night time.

There is no pretence that defendant was at the time of this arrest in any way obstructing the street, or interfering with the rights of any other person, or conducting himself in a disorderly manner; the only charge against him being that he violated said ordinance on the 4th day of August, 1904, and on divers other days and times prior thereto, by unlawfully lounging, standing and loafing around and about and at certain public street corners and other public places, to-wit, Eleventh street and Washington avenue, in the day and night time. While the city has the undoubted right, under its charter, to regulate the use of its streets, it has no right to do so in a way that interferes with the personal liberty of the citizen as guaranteed to him by our Constitution and laws. Under this ordinance it is just as much an offense to stand or loaf around upon the corner of one of the streets in the city for five minutes as for two hours or more, time not being an ingredient of the offense, and this, too, regardless of the fact that the offender may not during that time impede the passage of other pedestrians or otherwise interfere with the rights of others. The defendant had the unquestioned right to go where he pleased and to stop and remain upon the corner of any street that he might desire, so long as he conducted himself in a decent and orderly manner, disturbing no one, nor interfering with any one's right to the use of the street. Is the ordinance in question, then, restrictive of or in violation of the right of personal liberty guaranteed to every citizen by section 4, article 2, of the Constitution of this State?

In St. Louis v. Roche, 128 Mo. 541, a city ordinance

making it an offense for any one to knowingly associate with persons having the reputation of being thieves, gamblers, etc., for the purpose of aiding and abetting such persons in their unlawful acts, was held invalid because an invasion of personal liberty. That case was followed in Ex parte Smith, 135 Mo. 223.

In the case of Pinkerton v. Verberg, 78 Mich. 573, it is said: "Personal liberty, which is guaranteed to every citizen under our Constitution and laws, consists of the right of locomotion,—to go where one pleases, and when, and to do that which may lead to one's business or pleasure, only so far restrained as the rights of others may make it necessary for the welfare of all other citizens. One may travel along the public highways or in public places; and while conducting themselves in a decent and orderly manner, disturbing no other, and interfering with the rights of no other citizens there, they will be protected under the law, not only in their persons, but in their safe conduct. The Constitution and the laws are framed for the public good, and the protection of all citizens, from the highest to the lowest; and no one may be restrained of his liberty, unless he has transgressed some law. Any law which would place the keeping and safe conduct of another in the hands of even a conservator of the peace, unless for some breach of the peace committed in his presence, or upon suspicion of felony, would be most oppressive and unjust, and destroy all the rights which our Constitution guarantees. These are rights which existed long before our Constitution, and we have taken just pride in their maintenance, making them a part of the fundamental law of the land."

It is, however, said for the city that "John Smith, a member of the public, has no right for his own private purposes, whatever they may be, to take his stand for a period of two hours every day upon a particular portion of the public street in a great and populous

city." That he has such right there can, in our opinion, be no question, providing he conducts himself in a peaceful, orderly manner, disturbs no one, and commits no overt act. In this case, according to the testimony of the officer who made the arrest, he arrested the defendant for the purpose of preventing him from doing "picket duty," which, as explained by the court, consisted in requesting men not to take the places of strikers.

In the case of Marx & Haas Jeans Clothing Co. v. Watson, 168 Mo. l. c. 150, Judge SHERWOOD, speaking for the court, said: "If these defendants are not permitted to tell the story of their wrongs, or, if you please, their supposed wrongs, by word of mouth or with pen or print, and to endeavor to persuade others to aid them by all peaceable means, in securing redress of such wrongs, what becomes of free speech, and what of personal liberty? The fact that in exercising that freedom they thereby do plaintiff an actionable injury, such fact does not go a hair towards a diminution of their right of free speech, etc., for the exercise of which, if resulting in such injury, the Constitution makes them expressly responsible."

In passing upon a similar question in the case of Hamilton-Brown Shoe Co. v. Saxey, 131 Mo. 212, this court, said: "They are free men, and have a right to quit the employ of plaintiffs whenever they see fit to do so, and no one can prevent them; and whether their act of quitting is wise or unwise, just or unjust, it is nobody's business but their own, and they have a right to use fair persuasion to induce others to join them in their quitting."

In Beaton v. Tarrant, 102 Ill. App. 124, it was held that workmen may use the streets and highways in a manner not inconsistent with public travel, for the purpose of entreaty, inducement and peaceable persuasion in good faith. The same rule practically is an-

nounced in Karges Furniture Co. v. Amalgamated Woodworkers Local Union, 165 Ind. 421, in which it is said: "Argument and peaceable persuasion are lawful means to prevent laborers from working for an employer against whom the labor union has ordered a strike."

Our conclusion is that the ordinance is unconstitutional and invalid because it infringes upon the right of personal liberty, and is unreasonable and oppressive. The judgment is affirmed.

All concur.