## In Re WILLIAM H. HEFFRON et al.

**St. Louis Court of Appeals, December 31, 1913.**

1. **BOYCOTT: What Is.** A boycott involves the idea of conspiracy and unlawful confederation on the part of several persons to injure the business of another.

2. **INJUNCTIONS: Right to Enjoin Interference with Business: Conspiracy.** A number of persons who have conspired or confederated together in combination may be restrained from interfering with the business of another so as to entail a substantial injury upon him, as by persuading his patrons, against their will, or by violence or threats, from having beneficial business intercourse with him.

3. **CIRCUIT COURTS: Proceedings Presumed to be Regular.** The circuit court being a court of general jurisdiction proceeding according to the course of the common law, all necessary presumptions are usually indulged in favor of its proceedings, if it appears that the orders or judgments involved were entered or given in a case in which the court had jurisdiction of the subject-matter and of the parties.

4. **HABEAS CORPUS: Scope of Inquiry.** Although a *habeas corpus* proceeding is a collateral attack on the judgment under which a person is restrained of his liberty, it is nevertheless competent to inquire, in a hearing on the writ, not only concerning the jurisdiction of the court over the subject-matter and the person of the person committed, but to also inquire into the facts concerning the particular exercise of jurisdiction by virtue of which such person was committed.

5. ———: ———: Commitment only Considered. In a *habeas corpus* proceeding, the question of whether the trial court had jurisdiction to imprison the petitioner for contempt in violating an injunctive order must be determined from the commitment itself, which is required by Secs. 2472 and 3884, R. S. 1909, to set forth, and is conclusively presumed to set forth, the facts on which it rests.

6. INJUNCTIONS: Violation: Civil or Criminal Contempt: Requisites of Commitment. A contempt for violating an injunction restraining the contemnor from interfering with plaintiff's business, although falling within the category of civil contempts, for the purpose of classification, is regarded in the law as criminal in its nature, when considered under the requirements of the statutes concerning the judgment and process of commitment by which the contemnor is restrained of his liberty; and hence, in such a case, the finding, judgment and commitment are to be strictly construed in favor of the contemnor, and all of the facts essential to show that the court had jurisdiction of the subject-matter and of the person and had jurisdiction to make the order in the particular case must appear in the judgment and the commitment.

7. HABEAS CORPUS: Proceedings Reviewable: Commitment for Contempt. One imprisoned for contempt for violating an order which the court had no authority to make may be released on *habeas corpus*.

8. INJUNCTIONS: Interference with Business: Congregating on Sidewalk. An injunction restraining striking employees from, singly or in numbers, stationing themselves or congregating upon the sidewalk adjoining and in front of the employer's place of business for the purpose of distributing cards or circulars, or of addressing remarks concerning the employer or its business, to persons passing along the sidewalk, was beyond the power of the court, since it had no right to restrain the parties from so using the sidewalk, unless they did so with a view of interfering with the employer's business, its employees or patrons, through threats, violence, intimidation, or by persuading persons desiring to patronize the employer to desist therefrom against their will, or unless the free ingress to or egress from the employers premises' were thereby impeded.

9. HIGHWAYS: Right to Congregate upon Sidewalks. Persons have a right to congregate upon and use the sidewalks in a public street, in the absence of a nuisance appearing, as by continual trespass, provided they do no injury to, nor congregate with a view of injuring, the property or business of another.

10. **INJUNCTIONS: Highways: Interference with Use of Sidewalk: Right of Abutting Owner to Enjoin.** While an obstruction or interference with the free use of sidewalks is a public nuisance, an abutting proprietor cannot restrain such nuisance, unless he suffers damages peculiar to him, different in kind, and not merely in degree, from those sustained by other members of the public.

11. ————: ————: ————: ————. The proprietor or occupant of a building abutting on a street may enjoin others from so using the sidewalk as to prevent free ingress and egress to and from the building, since, although the obstruction of the street constitutes a public nuisance, it also involves a private nuisance inflicting a peculiar injury on him, different in kind, and not merely in degree, from that sustained by the members of the community at large.

12. ————: **Right to Enjoin Distribution of Circulars: Constitutional Law: Freedom of Speech.** It is not within the power of a court of equity to restrain one from distributing cards or circulars concerning the business of another, or of addressing remarks concerning his business to persons passing along the sidewalk, if nothing more appears, since the constitutional provision assuring the right of free speech implies that the right is to be enjoyed by every citizen, subject only to his liability in damages for its abuse.

13. ————: **Interference with Business: "Patrolling."** An injunction restraining striking employees, either singly or in numbers, from patrolling the sidewalk adjoining the employer's place of business was too vague and indefinite to be enforcible, since, while "patrolling" involves the idea of walking to and fro as a guard, it in and of itself implies nothing unlawful.

14. ————: ————: **Force: Intimidation, etc.** Striking employees were properly enjoined from preventing, or attempting to prevent, by force, violence, threats, menace or intimidation, persons from patronizing the employer's place of business and from compelling, or attempting to compel, by threats, intimidation, force or violence, other employees to refuse to perform their duties.

15. ————: **Violation: Contempt: Sufficiency of Commitment.** Where an injunction restrained striking employees from assaulting or exercising violence on any person patronizing the employer's place of business, or any of its employees, a judgment and commitment for contempt, stating that one of the defendants had committed an assault upon a person named

179 App. 41

within a short time after he had left the employer's place of business, and that the assault was unprovoked and in violation of the injunction, without any finding that such person was a patron or employee of the employer, was insufficient to warrant the imprisonment of such defendant, under the rule that the commitment must bring the defendant strictly within the terms of the injunction and show that he violated it; the statement that it was a violation being a conclusion.

## Habeas Corpus—Original Proceeding.

WRIT AWARDED.

*Edward W. Foristel, John B. Dempsey, George H. Shields* and *Leighton Shields* for petitioners.

*Leahy, Saunders & Barth* for respondent.

STATEMENT.—This is an original proceeding instituted in this court through suing out a writ of *habeas corpus*. There are three of the petitioners who invoke the writ, viz., William H. Heffron, George Ringler and Oscar Close. Though it does not fully appear, it is to be inferred that these petitioners, with a number of others, were defendants in an injunction suit instituted by the St. Louis Catering Company against Hubert C. Wade and others in the circuit court of the city of St. Louis with a view of restraining them from levying and pursuing a boycott against the plaintiff catering company and its business. However, a boycott involves the idea of a conspiracy and unlawful confederation on the part of several to injure the business of another, and nothing of that kind appears on the record before us, unless it is to be presumed that the circuit court gave judgment sustaining the injunction on that ground.

It is to be inferred from the record that the petitioners are waiters and members of a waiters' union, and it may be that they had a grievance against the catering company, but this does not fully appear from

the judgment and commitment under which they are restrained of their liberty. It appears the three petitioners, together with a number of others, were charged with contempt for having violated a restraining order against them. On a hearing of the charge of contempt, after notice, the court found a number of the defendants not guilty of the charge, but entered a judgment of contempt against the three petitioners and one Hooper. By this judgment a fine was assessed against each and they were committed to jail for its nonpayment. Hooper's fine was afterwards paid and he was, therefore, discharged. The three petitioners, Heffron, Ringler and Close, after having been confined in jail several days, sued out the writ of *habeas corpus* involved here. The jailer of the city of St. Louis, in making his return to the writ, exhibits the commitment, which purports to be a copy of the judgment under which the petitioners are confined in jail. Such commitment, revealing a certified copy of the judgment, is as follows:

"State of Missouri,  ⎱ ss.
City of St. Louis.  ⎰

"To the Sheriff of the City of St. Louis, Greeting:

"Whereas on the tenth day of November, in the year of our Lord, nineteen hundred and thirteen, at our circuit court in the city of St. Louis and State of Missouri, before Honorable J. Hugo Grimm, one of the judges sitting in division No. 1 thereof, William H. Heffron, George Ringler, Thomas Hooper and Oscar Close were convicted of contempt of court as more fully appears from the judgment thereof and made a part of this commitment, entered in Record 270, at page 352, in words and figures as follows, to-wit:

. " 'Monday, November 10, 1913.
" 'St. Louis Catering Company, a corporation,
v.                                    86496-A
" 'Hubert C. Wade, et al.

" 'Now at this day the citation for contempt heretofore issued in the above entitled cause against defendants Hubert C. Wade, Thomas Hooper, C. J. Griffin, George Ringler, John B. Carpenter, John T. Green, James Scully, William Heffron, James Furlong, Herman Ball, John Kroeger, Vincent Hagan, Oscar Close, Frank Bush, James Allen and Frank Murray, coming on to be heard, comes the plaintiff by its attorney, come also all of the respondents excepting respondents C. J. Griffin, John Kroeger and Frank Murray, by their respective attorneys, and submit this matter to the court upon the pleadings, the evidence and the proof adduced; and the court having heard and duly considered the same, and being fully advised in the premises, doth find that on September 12, 1913, an order to show cause and temporary restraining order was granted against defendants, returnable September 15, 1913, and that all of the defendants entered their appearance to said order to show cause and filed their joint return thereto; and that thereafter, to-wit, October 6, 1913, a temporary injunction was granted in the above cause, upon plaintiff's giving a bond in the sum of five thousand dollars, to be approved by the court or judge, restraining the defendants, their servants, agents, associates and representatives, and each of them, from either singly or in numbers stationing themselves or congregating upon the sidewalk adjoining and in front of plaintiff's place of business, the southeast corner of Sixth and St. Charles street, for the purpose of distributing cards or circulars containing statements concerning plaintiff or its business, or of addressing remarks concerning plaintiff or its business to persons passing along said sidewalk;

" 'From either singly or in numbers patrolling the sidewalks adjoining plaintiff's said place of business;

" 'From preventing or attempting by the use of force, violence, threats, menaces, or intimidations, any person from patronizing plaintiff's said place of business;

" 'From compelling or attempting to compel by threats, intimidations, or acts of force or violence, any of the employees of the plaintiff to refuse to or fail to perform their duties as such employees;

" 'That during the afternoon of said date the said bond was approved and filed;

" 'And doth further find that the respondents John T. Green, John B. Carpenter, James Scully, James Furlong, Herman Ball, John Kroeger, Vincent Hagan, C. L. Griffin, Hubert C. Wade, Frank Bush, and James Allen are not guilty of contempt of this court; and that the respondents William H. Heffron, George Ringler, Thomas Hooper and Oscar Close are guilty of contempt of this court, in violating the temporary injunction issued in this cause on the 6th day of October, 1913, in this, to-wit: That defendants George Ringler and Thomas Hooper, members of the joint executive board of Waiters' Union No. 20, caused certain men who were paid by said joint executive board, to do picket duty on the 7th day of October, 1913, in front of plaintiff's place of business at the southeast corner of Sixth and St. Charles street, and caused said men to patrol the sidewalks adjoining plaintiff's said place of buisness; that defendant William H. Heffron was captain and in charge of the pickets and superintended their action at plaintiff's said place of business, and paid them for their services out of the funds furnished by the joint executive board of the several unions co-operating in this controversy; that he knew these men were patrolling and did so wholly under his direction;

" 'That the defendant Oscar Close committed an assault upon one Frank Primm, within a short time after he had left plaintiff's St. Charles street front, and that the assault was unprovoked; all in violation of the temporary injunction issued as aforesaid.

" 'Wherefore, it is considered and adjudged by the court that William H. Heffron, for the acts aforesaid, is guilty of a contempt of this court and because thereof doth fine the said William H. Heffron the sum of twenty-five dollars and costs; said fine to be paid into the school fund; and that the defendants George Ringler, Thomas Hooper, and Oscar Close, for the ·acts aforesaid, are guilty of a contempt of this court, and because thereof doth fine each of said defendants the sum of ten dollars and costs, said fines to be paid into the school fund; and in default of the payment of said fines and costs said defendants be committed until the fines and costs are paid, or they be otherwise discharged by due course of law.

" 'The court doth further order and adjudge that respondents John T. Green, John B. Carpenter, James Scully, James Furlong, Herman Ball, John Kroeger, Vincent Hagan, C. J. Griffin, Hubert C. Wade, Frank Bush, and James Allen, stand discharged from the rule to show any cause why they should not be punished for contempt.'

"And whereas, the court did consider and adjudge that said William H. Heffron, for said contempt, be adjudged to pay into the school fund a fine of twenty-five dollars, and the defendants George Ringler, Thomas Hooper and Oscar Close, for said contempt, were each adjudged to pay into the school fund a fine of ten dollars, and all of said defendants were also adjudged to pay the costs of the proceeding in that behalf accrued, amounting to forty-four and 50/100 dollars.

"And whereas, on the 14th day of November, 1913, the defendants William H. Heffron, George

Ringler, Thomas Hooper and Oscar Close filed their joint and several motion for a new trial and rehearing of the judgment rendered against them for violation of the temporary injunction, which said joint and several motion as to defendants William H. Heffron, George Ringler and Oscar Close was withdrawn on the 21st day of November, 1913, and as to defendant Thomas Hooper was taken as submitted by the court, and thereafter on the 1st day of December, 1913, overruled by the court.·

"You are now therefore commanded that of the goods and chattels, lands and tenements of the said William H. Heffron, George Ringler, Thomas Hooper and Oscar Close, in your city found, you cause to be made the aforesaid fines and costs; and for want of sufficient goods and chattels, lands and tenements whereon to levy and to make said fines and costs, you are hereby commanded to take the body of the said William H. Heffron into your custody and convey him to the jail of the city of St. Louis in the State of Missouri, the keeper whereof is hereby commanded to receive the said defendant William H. Heffron and him there keep until the said fine of twenty-five dollars, so assessed against him, and costs amounting to the sum of $11.125 dollars, shall have been paid by the said defendant William H. Heffron, or he be otherwise discharged by due course of law.

"You are further commanded to take the body of George Ringler into your custody and convey him to the jail of the city of St. Louis, in the State of Missouri, the keeper whereof is hereby commanded to receive the said defendant George Ringler and him there keep until the said fine of ten dollars, so assessed against him and costs, amounting to the sum of $11.125 dollars, shall have been paid by the said defendant George Ringler, or he be otherwise discharged by due course of law.

"You are further commanded to take the body of Thomas Hooper into your custody and convey him to the jail of the city of St. Louis in the State of Missouri, the keeper whereof is hereby commanded to receive the said defendant Thomas Hooper and him there keep until the said fine of ten dollars, so assessed against him and costs, amounting to the sum of $11.125 dollars, shall have been paid by the said defendant Thomas Hooper, or he be otherwise discharged by due course of law.

"You are further commanded to take the body of Oscar Close into your custody and convey him to the jail of the city of St. Louis in the State of Missouri, the keeper whereof is hereby commanded to receive the said defendant Oscar Close and him there keep until the said fine of ten dollars, so assessed against him, and costs, amounting to the sum of $11.125 dollars shall have been paid by the said defendant Oscar Close or he be otherwise discharged by due course of law.

"You are further commanded to make return of this writ within thirty days from date how you executed the same.

"Witness, Chas. R. Graves, Clerk of the said Court, with the seal thereof hereto affixed, at (Seal) office, in the city of St. Louis, this 1st day of December, in the year of our Lord, nineteen hundred and thirteen.

(Signed)     CHARLES R. GRAVES,
Clerk Circuit Court.''

NORTONI, J. (after stating the facts).—There can be no doubt that a number of persons, confederated together in combination, as through a conspiracy, may be restrained by a court of equity from interfering with the business of another so as to entail a substantial injury upon him, as by persuading his patrons, against their will, or by means of violence or threats

In re Heffron.

preventing them from having beneficial business intercourse with the person against which the unlawful conspiracy is directed. [See Lohse Patent Door Co. v. Fuelle, 215 Mo. 421, 114 S. W. 997; Clarkson v. Laiblan, 178 Mo. App. 708, 161 S. W. 660.] It is, therefore, urged that the petitioners should be remanded here and the writ denied, for the reason we must presume the court found that they had conspired to injure the business of the St. Louis Catering Company and issued the injunction on that ground. It is true the circuit court is a court of general jurisdiction which proceeds according to the course of the common law, and it is true, too, that all necessary presumptions are usually indulged in favor of the proceedings of such a court, if it appears the orders or judgments involved were entered or given in a case over which the court had jurisdiction of the subject-matter and the person of the parties.

There can be no doubt that the circuit court possesses jurisdiction of the subject-matter when the case is one in equity involving injunctive relief against an unlawful conspiracy, such as a boycott, and it is true, too, that these petitioners were parties defendant to a suit in equity in which the St. Louis Catering Company was plaintiff and injunctive relief was sought to restrain them from interfering with the plaintiff's business, as by prosecuting a boycott against it. But because a court is possessed of jurisdiction over the subject-matter—that is, cases of the general class of actions—and the person, is no reason why it should transcend its powers and enjoin something which may not be inhibited by the law. If a conspiracy be found, or even conceded, it is obvious the court is without power to enjoin the conspirators, on that ground alone, from merely walking along the street or conversing with others, unless the restraining order connects such acts with the unlawful conspiracy and forbids it in furtherance thereof. In this view, the rule of decision is

declared that, though a *habeas corpus* be a collateral attack on the judgment, it is nevertheless competent to inquire thereon, not alone as to the jurisdiction of the court committing the prisoner over the subject-matter and his person, but to inquire as well as to the jurisdiction to commit as for the specific offense charged—that is, inquire into the facts concerning the particular exercise of jurisdiction by which the petitioner is restrained of his liberty. [See Ex parte Creasy, 243 Mo. 679, 148 S. W. 914.]

The inquiry touching this matter is to be had in the instant case by reviewing the commitment, which contains a copy of the judgment of conviction and is conclusively presumed to set forth the facts on which it must rest. We say the commitment is conclusively presumed to set forth the facts on which the judgment of contempt is predicated, for the reason that our statute requires the facts and circumstances to be fully stated and for the reason, too, that the offense of contempt is criminal in its nature. The statute pertaining to *habeas corpus* (Sec. 2472, R. S. 1909) directs the court to remand the petitioner when he is restrained of his liberty "for any contempt, specially and plainly charged in the commitment, by some court, officer or body, having authority to commit for a contempt so charged." This implies that the contempt for which the prisoner is withheld is to be pointedly charged and set forth in the commitment.

But this is not the only statutory provision touching the matter in judgment here, for another section is to be found as parcel of the provisions on contempt. Section 3884, Revised Statutes 1909, touching commitment for contempt, provides, "Whenever any person shall be committed for any contempt specified in this chapter, the particular circumstances of his offense shall be set forth in the order or warrant of commitment." It is true the contempt involved here falls within the category of civil contempts, for the pun-

ishment is inflicted because of the alleged violation of an injunction granted in aid of the St. Louis Catering Company and in furtherance of its rights established by the decree. [See State ex rel. v. Bland, 189 Mo. 197, 88 S. W. 28.] But though such be true, the statute last quoted obtains as a rule of decision in such cases as well as in others, for it requires that ''Whenever any person shall be committed for any contempt specified in this chapter, the particular circumstances of his offense shall be set forth in the order or warrant of commitment.'' [Sec. 3884, R. S. 1909.] Contempts of the character of this one are provided for in the chapter referred to in the section last quoted, as will appear by reference to sections 3881, 3882, Revised Statutes 1909. Section 3881 authorizes the court to punish, as for criminal contempt, persons guilty of willful disobedience of any order lawfully issued or made by the court. Such is the case here, for the petitioners were convicted of contempt in that they willfully disobeyed the restraining order theretofore issued. Such contempts, even though falling within the category of civil contempts, for purpose of classification, are regarded in the law as criminal in their nature when considered under the requirements of these statutes concerning the judgment and process of commitment by which the person charged is restrained of his liberty. Therefore, the finding, the judgment and the commitment of the court are strictly construed in favor of the accused. In other words, nothing is to be inferred in favor of the restraint of liberty, and presumptions and intendments will not be indulged in in order to aid it. All of the facts essential to show that the court had jurisdiction of the subject-matter, of the person, and to make the order in the particular case must appear in the judgment and the commitment by which the citizen is restrained, and this is true because it is said the statute requires it. [See Ex Parte Creasy, 243 Mo. 679, 148 S. W. 914; In re Shull,

221 Mo. 623, 121 S. W. 10; Church on Habeas Corpus (2 Ed.), 316.]

Viewed under this rule of decision, the judgment of conviction and the commitment issued thereon are wholly insufficient to justify the punishment as for contempt of the three petitioners for the reason, first, that the court was without power to make the broad and sweeping order for a violation of which petitioners Heffron and Ringler are convicted; and, second, because it does not appear from the finding of facts, that petitioner Close violated the terms of the order on which he was convicted.

There can be no doubt of the proposition that one imprisoned as for contempt for violating an order which the court possessed no authority to make, may be released on *habeas corpus.* [See Ex Parte Craig, 130 Mo. 590, 32 S. W. 1121; Ex Parte Arnold, 128 Mo. 256, 30 S. W. 768, 1036; In re Ayers, 123 U. S. 443; 15 Am. & Eng. Ency. Law (2 Ed.), 178.]

Looking to the commitment and judgment, it appears that on October 6th a temporary injunction was granted, restraining the petitioners and others who were defendants in the injunction suit, "their servants, agents, associates and representatives, and each of them, from either singly or in numbers stationing themselves or congregating upon the sidewalk adjoining and in front of plaintiff's place of business, the southeast corner of Sixth and St. Charles street, for the purpose of distributing cards or circulars containing statements concerning plaintiff [that is, the St. Louis Catering Company] or its business, or of addressing remarks concerning plaintiff or its business to persons passing along the sidewalk; from either singly or in numbers patrolling the sidewalk adjoining plaintiff's said place of business; from preventing or attempting by the use of force, violence, threats, menaces or intimidations, any person from patronizing plaintiff's said place of business; from compelling

or attempting to compel by threats, intimidations, any person from patronizing plaintiff's said place of business; from compelling or attempting to compel by threats, intimidations or acts of force or violence, any of the employees of the plaintiff to refuse to or fail to perform their duties as such employees.''

Obviously so much of this injunction as merely restrains defendants, singly or in numbers, from stationing themselves or congregating upon the sidewalk adjoining and in front of plaintiff's business for the purpose of distributing cards or circulars concerning plaintiff or its business, or of addressing remarks concerning plaintiff or its business, to persons along the sidewalk avails nothing. The court was without power to restrain the parties from thus using the sidewalk, unless they did so with a view of interfering with plaintiff's business, its employees or patrons through threats, violence, intimidation, or by persuading persons desiring to patronize it or causing them to desist therefrom against their will, except to restrain the free ingress and egress about plaintiff's premises as a private nuisance through continual trespass. Persons have a right to congregate upon and use the sidewalks in a public street, in the absence of a nuisance appearing, as by continual trespass, provided they do not injure, or do so with a view of injuring, the property or business of another.

Here the injunction restrains the petitioners from, singly or in numbers, stationing themselves or congregating upon the sidewalk adjoining and in front of plaintiff's place of business, without regard whatever to their conduct and as if any such congregating or standing violated plaintiff's property rights. It in no sense is restrictive of a use of the sidewalk that is unlawful, for it is not directed against the use of the sidewalk by the petitioners with a view of interfering with plaintiff's business, its employees or patrons, through threats, violence, intimidation, or by persuad-

ing persons desiring to patronize it, or causing them to desist therefrom, against their will, or by impeding the free access, that is, ingress to and egress from plaintiff's premises. If the injunction proceeds on the theory that it was competent to restrain the petitioners from interfering with the free ingress and egress to plaintiff's premises, then it should have reckoned with that matter and inhibited such conduct as would entail that result.

There can be no doubt that one and all may use the sidewalks for lawful purposes, and it is certain that an obstruction or interference with such free use operates a public nuisance. But though such be true, a private person, such as an abutting proprietor, is without remedy to restrain such public nuisance unless he suffer damages peculiar to him which are different in kind, and not merely in degree, from those sustained by other members of the public. In such cases, and such cases alone, is redress afforded to the private individual, either in law or equity, on the ground of public nuisance. [See Rude v. City of St. Louis, 93 Mo. 408, 6 S. W. 257; Fairchild v. City of St. Louis, 97 Mo. 85, 11 S. W. 60; Bailey v. Culver, 84 Mo. 531; Patton v. Forgey, 171 Mo. App. 1, 153 S. W. 575.] But there can be no doubt that an adjoining proprietor or occupant of the adjacent building possesses such a property right in the sidewalk in front of his premises as authorizes him to enjoin others from so using it as to prevent the free ingress and egress to and from the property, for though such use may constitute a public nuisance, it obviously entails a private nuisance as well and inflicts a peculiar injury upon him, different in kind, and not merely in degree, from that sustained by the members of the community at large. Even though a public nuisance does not appear, a private nuisance may be entailed, for it is clear that the right of an abutting owner, or one occupying such premises, to access to and from the street is a private right in

the sense that it is something different from the right which the members of the public have to use the street for public purposes. Conformably to this distinction and in part based upon it, a person owning or in possession of premises abutting on the street whose right of access to the same is unreasonably or. unlawfully obstructed may redress the wrong either at law or in equity. [See Dillon, Municipal Corporations (3 Ed.), sec. 730; Schopp v. City of St. Louis, 117 Mo. 131, 22 S. W. 898; Rude v. City of St. Louis, 93 Mo. 408, 414, 6 S. W. 257; Cooley, Torts (3 Ed.), 736-738.]

In accord with this principle, Mr. Eddy, in his work on Combinations (3 Ed.), sec. 1034, thus succinctly states the law on the subject:

"The owner or occupant of a house, store, mill or factory, or any building or piece of property legitimately occupied and used by him, has a right of property in the streets adjacent thereto and used as approaches to his premises. He has the right of free and uninterrupted ingress and egress, and all parties using the streets must use them subject to this right of the abutting property owner. Anyone who violates this right of the property owner to the use of the streets that are appurtenant to his property by interfering with or impairing in any manner his free ingress and egress is liable for all damages occasioned by such interference, and the property owner may also abate such interference as a private nuisance by injunction.

"It is as much a nuisance to block up the street and impair the right of the property owner to ingress and egress by the continual presence of bodies of men as it would be to build barricades and embankments in the street.

"This right of the abutting property owner to an unobstructed access to his property over the streets and highways is not inconsistent with the right of striking employees to use the same streets and highways for the

lawful conduct and the maintenance of their strike by intercepting anyone going to work for the parties, and peaceful persuasion or argument against such parties taking the places of the striking employees.

"It is the right of every workingman to pass freely through the streets and highways to the place of his employment. This right is guaranteed by the law of every free country, wherever the right to work as one pleases and to contract for labor as one chooses is permitted by law; it is a part of the liberty which every man enjoys in this country as his birthright."

See, also, American Steel & Wire Co. v. Wire Drawers, etc., 90 Fed. 608.

While it was competent for the court to enjoin the defendants from congregating and stationing themselves upon the sidewalk in front of the premises of the catering company so as to interfere with the free ingress and egress from its place of business, no such inhibition is to be found in the order, but instead it proceeds in broad and sweeping language as though any congregation or standing upon the sidewalk by them was unlawful. In this the injunction exceeded the power of the court in that behalf, unless such conduct is to be prohibited on other grounds.

In further discussing the right of members of labor unions to assemble in the street, Mr. Eddy, in his work on Combinations, sec. 536, says:

"It is unlawful for the employees who are out on a strike to patrol the streets adjacent to employers' premises both day and night, and to keep within call at all times a large number of men for the nominal purpose of dissuading other workmen from taking the place of the striking employees, where it is clear from the circumstances that the patrolling was for the purpose of intimidating workmen seeking to enter the premises."

It therefore appears that this branch of the law on the subject requires the elements of force, threats,

intimidation and matter of that character to render the conduct unlawful. The injunction here—that is, the portion now under consideration—does not relate to force, violence, or intimidation, and it therefore exceeds the power of the court concerning the subject-matter. Neither is it within the power of a court of equity to restrain one from distributing cards or circulars concerning the business of another or of addressing remarks concerning one's business to persons passing along the sidewalk, if nothing more appears. The point has been expressly decided by our Supreme Court in Marx & Haas, etc., Co. v. Watson, 168 Mo. 133, 67 S. W. 391. The theory of that case is that injunction will not lie to restrain such distribution of cards and circulars and having conversation, because of our constitutional provision assuring the right of free speech. It is said that, though such conduct may entail an actionable injury at law upon the offender, for which he may be required to answer, the injunctive relief of a court of equity may not be invoked to prevent it, for the Constitution essentially implies the right is to be enjoyed by every citizen, subject only to his liability to respond in damages on that account for its abuse. On the same theory, and in the same view, this court has heretofore declared that an injunction may not be awarded against the publication of a libel, though an action in damages for the wrong will lie thereafter. [See Life Ass'n, etc., v. Boogher, 3 Mo. App. 173.]

It is urged that the case of Marx & Haas, etc., Co. v. Watson, 168 Mo. 133, 67 S. W. 391, is essentially overruled by the more recent one of Lohse Door Co. v. Fuelle, 215 Mo. 421, 114 S. W. 997, but to the extent above stated, the two are not inconsistent. Indeed, the Supreme Court so said in the latter case, as will appear by consulting the opinion. It is true, when the facts of the Marx & Haas case are thoughtfully considered, the judgment of the court seems to be incon-

sistent with the later one of Lohse Door Co. v. Fuelle, as the element of conspiracy appeared in both, and in the Marx & Haas case there were other facts present which it would seem authorized injunctive relief, wholly aside from the publication of the circular, on other and independent grounds. But be this as it may, the Supreme Court, as it appears, paid no heed to such other facts and treated the matter in that case solely as an attempt to enjoin the publication of a boycott only and declared that equity would afford no relief in such cases because of the constitutional right of free speech. In and from the report of the later case of Lohse Door Co. v. Fuelle, it is to be inferred the Supreme Court took notice of this, for it points out in the opinion that the only question "discussed" in the Marx & Haas case was that concerning the power of a court of equity to enjoin the "publication" of a boycott and in this view says the two cases are not inconsistent.

It is certainly true, under the authorities above cited, that the court is without power to enjoin the distribution of "cards or circulars containing statements concerning plaintiff or its business or of addressing remarks concerning plaintiff or its business to persons passing along said sidewalk," unless it appears that such cards, circulars and remarks concerning plaintiff's business were detrimental in character and used to injure it, and, even then, we decline to say that they, standing alone, could be enjoined, for the question is not made in the case. No such limitation is prescribed in the injunction, and in any view it exceeds the power of the court in that behalf for this reason. [See, too, Iron Molders' Union v. Allis-Chalmers Co., 166 Fed. 45-50.]

So much of the injunction as purports to enjoin the petitioners, "either singly or in numbers," from patrolling the sidewalk adjoining plaintiff's business avails nothing, for it does not appear what the court

intended thereby. This is vague and indefinite. The word "patrolling" involves the idea of one walking to and fro as a guard, but in and of itself implies nothing unlawful. It was certainly competent for the court to enjoin patrolling against patrons or prospective patrons of plaintiff's business from entering there or for the purpose of interfering with its employees. It was competent, too, for the court to enjoin such patrolling as might interfere with the free use of the sidewalk to afford ingress and egress to plaintiff's premises or such as should be accompaned with threats, intimidation, violence or conduct that should annoy and deter plaintiff's patrons or employees, but nothing of this kind is enjoined. The word "patrolling" in and of itself implies nothing unlawful, and the act may therefore not be forbidden, except as it is attended by the conduct of the patrol or the circumstances of the situation introducing an unlawful element. In this connection see City of St. Louis v. Gloner, 210 Mo. 502, 109 S. W. 30; Beaton v. Tarrant, 102 Ill. App. 124, 129; Jones v. Van Winkle, G. & M. Works (Ga.), 17 L. R. A. (N. S.) 848.

So much of the injunction as inhibits the defendants from preventing, or attempting, by the use of force, violence, threats, menaces or intimidation, to prevent any person from patronizing plaintiff's place of business is certainly valid and within the power of the court. So, too, is that portion of the order which forbids petitioners from compelling or attempting to compel, by threats, intimidation or acts of force or violence, any of the employees of plaintiff to fail to perform their duties as such employees. [See Hamilton-Brown Shoe Co. v. Saxey, 131 Mo. 212, 32 S. W. 1106.] But it does not appear from the finding of facts set forth in the judgment of contempt and the commitment that this portion of the order was violated by the petitioners. The finding of facts goes to the effect that George Ringler, along with others, was a

member of the joint executive board of Waiters' Union No. 20 and, as such, caused certain men who were paid by such joint executive board to do picket duty on the 7th day of October, 1913, in front of plaintiff's place of business at the southeast corner of Sixth and St. Charles streets, and caused said men to patrol the sidewalk adjoining plaintiff's said place of business; that petitioner William H. Heffron was captain and in charge of the pickets and superintended their action at plaintiff's said place of business and paid them for their services out of the funds furnished by the joint executive board of the several unions co-operating in this controversy; that he knew these men were patrolling and did so wholly under his direction. For this alone petitioners Ringler and Heffron were found guilty of contempt, without any finding that such picketing or patrolling, for which they were responsible, was detrimental to the business of the St. Louis Catering Company, that it was designed for that purpose or that it tended to impair its trade or impede its patrons or interfere with its employees, or that it was pursued with a view to impair the beneficial intercourse of other persons with the catering company, or that such patrolling or picketing involved any sort of threats, intimidation or violence against the catering company, its patrons, employees, or anybody else, for that matter. Moreover, there is no finding that such patrolling or picketing amounted to a nuisance or operated to impair the free ingress and egress to plaintiff's premises or even constituted a trespass of any kind against its rights.

Obviously this finding of fact against the two petitioners is insufficient to sustain their conviction as for contempt in violating the injunction, even though the injunction were comprehensive enough, and we have pointed out its insufficiency above. As before said, patrolling in and of itself, unaccompanied by other elements which render it obnoxious, is not un-

lawful. It has been expressly decided by the Supreme Court that the mere fact of picketing implies nothing unlawful. In that case the picket stood as a "picket" for hours on different days on a public street of the city, performing a duty which, as explained by the court, consisted in requesting men, with due decorum, not to take the place of strikers. This, in and of itself, the Supreme Court declared was not an unlawful use of the sidewalk. [See St. Louis v. Gloner, 210 Mo. 502, 109 S. W. 30.] That such is the accepted law on the subject we believe to be well established.

The Supreme Court of Indiana, in the case of Karges Furniture Co. v. Amalgamated, etc., Union, 165 Ind. 421, declared picketing in and of itself to be entirely lawful. The court said: "Whether picketing is lawful or unlawful, depends in each particular case upon the conduct of the pickets themselves." In Iron Molders' Union v. Allis-Chalmers Co., 166 Fed. 45, the United States Circuit Court of Appeals for the Seventh Circuit asserted the same doctrine and modified the decree restraining "picketing" by adding such words as were essential to render the act obnoxious, the words so added being "in a threatening or intimidating manner." [See, also, to the same effect Mills v. U. S. Printing Co., 99 App. Div. N. Y. 605; Everett Waddey v. R. T. Union, 105 Va. 188; Jones v. Van Winkle G. & M. Works (Ga.), 17 L. R. A. (N. S.), 848; Perkins, Campbell & Co. v. Rogg, 28 Weekly L. Bull. 32.]

So, it appears that though these petitioners were found to have been engaged in patrolling and picketing, these words in and of themselves imply nothing unlawful, and there is no finding that, in pursuing the patrolling and picketing they interfered with the free access as by ingress and egress to the premises of the catering company or threatened, intimidated, or coerced either plaintiff, any of its officers, employees or patrons, or in any wise conducted themselves in a manner obnoxious to the law.

It appears, from the judgment and commitment, that the petitioner Oscar Close committed an assault upon one Frank Primm within a short time after he had left plaintiff's said place of business and at a point somewhere east of plaintiff's St. Charles street front, and that the assault was unprovoked, all in violation of the temporary injunction issued as aforesaid. The words, ''The assault was unprovoked, all in violation of the temporary injunction issued as aforesaid'' are to be treated as a conclusion, for that the facts concerning the assault and whether the assault was within the terms of the injunction are not set forth at all. The injunction forbids the petitioners from exercising violence or assaulting any person patronizing plaintiff's said place of business or any of plaintiff's employees. If Primm, whom the court finds was assaulted by the petitioner Close, was either a patron of the catering company or one of its employees, the facts should have been so found by the court and stated in the judgment convicting him, for no intendments or implications may be invoked in aid of it. In other words, under the strict rule which obtains in contempt cases, as above pointed out, the finding and judgment must bring the party strictly within the terms of the injunction and show that he violated it. Nothing may be inferred. It may be that Close committed an unprovoked assault upon Primm, on the sidewalk near plaintiff's place of business for which Close would be answerable under the criminal laws of the State or under the ordinance of the city, but this alone is not sufficient to render him subject to imprisonment as for contempt for violating an order of the court, which restrains such conduct only when directed against a patron or employee of the catering company. The mere fact that Primm had recently come out of the catering company's place of business is not sufficient, under the strict rule which obtains, to sustain the conviction for contempt because of an assault upon him,

for we cannot infer, and it is not implied, that Primm was either a patron or an employee of the catering company. Such inferences and intendments are not allowed when persons are restrained of their liberty as for contempt of court, according to the decision of the Supreme Court in In re Shull, 221 Mo. 623, 121 S. W. 10 and Ex Parte Creasy, 243 Mo. 679, 148 S. W. 914.

It is clear that both the judgment of contempt and the commitment thereon are insufficient to justify the conviction and imprisonment of the petitioners and they should, therefore, be discharged. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.