## 35891. SOLES *v.* CITY OF VIDALIA.

DECIDED OCTOBER 11, 1955—REHEARING DENIED OCTOBER 27, 1955.

*Steve M. Hall, W. T. Whatley,* for plaintiff in error.

*Jackson & Graham,* contra.

TOWNSEND, J. ■ The appearance-supersedeas bond in certiorari must be executed according to the provisions of Code

§ 19-214 as a condition precedent to the sanctioning of the application. Among other things, the bond shall be made payable "if the conviction be in a municipal court, to the municipality." This condition, however, is satisfied if the obligee in the bond is such an officer of the municipality as has power to bind it in the subject matter of the instrument. "If it is a valid contract between the obligors and the city, adequate to the accomplishment of the purposes mentioned in the statute and conditioned according to the obligation therein stated, it is good." *Williams* v. *City of Tifton,* 3 *Ga. App.* 445 (60 S. E. 113). (In that case it was held that a bond payable to a named person as mayor of the City of Tifton and his successors in office substantially complied with the statutory provisions.)

In this case the bond was made payable to "Nat. O. Carter, City Recorder of Vidalia, or his successors in office," he being the City Recorder who tried the case in which the defendant was convicted. If such bond was given to the obligee in his personal capacity only, it would not, of course, be a valid contract with the city. Code § 4-401, and citations. It appears, however, from the charter of the City of Vidalia (Ga. L. 1922, pp. 1004, 1023-1025), that under section 24 the recorder has power and authority, where that office has been created, to try all offenses against the ordinances of the city; and under section 26 he has authority "to forfeit all appearance bonds when the principal shall fail or refuse to appear at said court at the times and places specified therein, under such rules and regulations as the Mayor and Council of said city shall by ordinance prescribe, and the said police court shall have the power and authority to do so, generally, all other acts and things necessary for the proper enforcement of its authority." Accordingly, the recorder is the person charged with the responsibility of forfeiting appearance bonds such as this when their conditions have not been complied with, and he necessarily does so for and on behalf of the city as such officer. This being so the petition affirmatively shows a valid contract between the obligors and the city for this purpose, and it was not subject to dismissal upon this ground. Nothing to the contrary was held in *Williams* v. *City of Dublin,* 24 *Ga. App.* 358 (100 S. E. 777), or *Long* v. *City of Crawfordville,* 55 *Ga. App.* 184 (189 S. E. 685). In those cases it did not affirmatively appear

that there was any named obligee in the bond, which was held to be a fatal defect.

■ The charter of the City of Vidalia, which is not under attack, provides in section 68 that the mayor and council "shall have the right and authority, by ordinance, to prohibit idling, loitering and loafing on the streets, alleys, lanes, squares and sidewalks of said city, or upon any of them, and to prohibit the idling, loitering and loafing in any of the public buildings in said city, and to prescribe penalties for the violation thereof." Pursuant to such charter provision a city ordinance, for the violation of which defendant was convicted, was enacted providing in part that "it shall be unlawful for any person to idle, loiter or loaf upon any of the streets, sidewalks, alleys, lanes, parks or squares of said City of Vidalia, or in any public building in said city."

The evidence showed the defendant to be a man unable to do any manual labor, afflicted with a deformity, suffering from rheumatism of the spine, and stomach ulcers, who lived in a hotel in downtown Vidalia and who had no known occupation but paid all his bills regularly, who owned an automobile and spent most of his time between 8:00 or 8:30 a. m. and 10:00 or 10:30 p. m. in his automobile, legally parked at a certain location, although sometimes he would be out of the car. Occasionally he would drive the car away for short periods of time and then bring it back, and occasionally he would be seen talking to other people. There was no evidence that he was ever disorderly, made any disturbance, or obstructed traffic.

A motion to dismiss the charges at the conclusion of the evidence was overruled, defendant contending that the ordinance, being unreasonable, is void; that it is unreasonable and void as to this defendant who is shown to be unable to work; that it is unreasonable in that it applies to public buildings, parks and like places; that it is an invasion of the rights of citizens, and in violation of the due process clause of the State Constitution. The constitutionality of the charter provision not being under attack, the ordinance, insofar as it follows charter provisions, will be taken as constitutional. *Young* v. *City of Waycross*, 11 *Ga. App.* 846 (76 S. E. 648). An ordinance may, however, be void for unreasonableness without reference to its constitutionality. *Richardson* v. *Coker*, 188 *Ga.* 170 (2) (3 S. E. 2d 636). "Streets

belong to the general as well as the local public; and if the control and general supervision of streets is conferred by the legislature upon the municipality, the municipality holds them in trust for the convenience and use of the public at large, and it becomes its duty to keep them in safe and suitable condition for the passage of persons and transportation of commodities." *Jones* v. *City of Moultrie*, 196 *Ga.* 526, 531 (27 S. E. 2d 39). The streets of a city belong to the public. *Schlesinger* v. *City of Atlanta*, 161 *Ga.* 148 (129 S. E. 861). This does not mean that a member of the public may so use the streets and sidewalks of a municipality as to interfere with the rights of others, but it does mean that the municipality holds such places, along with its parks and public buildings, in trust for the public to whom they belong and whose usual and ordinary use of them is a perquisite of citizenship. The right of the trustee municipality to deny to the owner-residents thereof the use of their streets must accordingly, where it exists, be justified on the ground that a greater right, infringement of which is threatened, is thereby being assailed. Examples of the justifiable use of such power are where disorderly or obnoxious conduct is apparent, where traffic is impeded by an obstruction, a congregation of persons, the selling of goods, and so on. See *Jones v. City of Moultrie*, supra; *Bunn* v. *City of Atlanta*, 67 *Ga. App.* 147 (19 S. E. 2d 553) ; *City of Dalton* v. *Staten*, 201 *Ga.* 754 (41 S. E. 2d 145) ; *Burns* v. *City of Carrollton*, 72 *Ga. App.* 628 (34 S. E. 2d 621). But the ordinance under attack makes no attempt to define or restrict the meaning of "idling" or "loitering," to conduct which would constitute a nuisance, a threat to morals, or an interference with the rights of others. Under its terms, window-shopping might well be "loitering," and it would be unlawful to stroll down a lane to enjoy the spring air, or to sit in a park to contemplate one's private affairs or the activity going on around him. We can hardly imagine a spot less conducive to enjoyable living than a town where such expressions of loitering and idleness are prohibited.

The defendant here was committing no unlawful act detrimental to morals or which constituted a nuisance or obstruction in any public place. Most of the time he sat in his lawfully-parked automobile, which he had a right to do. He was accordingly guilty of no offense, and an ordinance attempting to penalize him

for this conduct is so arbitrary and unreasonable as to be void. See 25 Am. Jur. 488, § 189; *Price* v. *Tehan,* 84 *Conn.* 164 (79 Atl. 68, 34 L. R. A. (NS) 1182, Ann. Cas. 1912B, 1183); St. Louis *v.* Gloner, 210 Mo. 502 (109 S. W. 30, 15 L. R. A. (NS) 973, 124 Am. St. R. 750); State *v.* Hunter, 106 N. C. 796 (11 S. E. 366, 8 L. R. A. 529). There is some testimony in the record which suggests that this defendant may have been convicted under this ordinance because of the suspicions of the police department that he was engaged in illegal liquor traffic. If such be the case, we feel sure that the able and efficient police department of this municipality will obtain the proper evidence for prosecution, in view of the fact that their testimony shows the defendant remains under their constant view from 8:30 a. m. until 10:00 p. m. In the meantime, the courts of this State do not sanction efforts to put one "out of circulation" because the police are unable to obtain evidence of unlawful activity with which to support their suspicions that some offense may have been committed.

The judge of the superior court erred in overruling and dismissing the application for certiorari.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*