[Civ. No. 9132.   Third Dist.   Feb. 8, 1957.]

CHARLIE WALTER ALVES, Appellant, v. JUSTICE COURT OF CHICO JUDICIAL DISTRICT, Respondent.

Robert E. Laughlin for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier, Deputy Attorney General, Loyd H. Mulkey, Assistant District Attorney, and Grayson Price, for Respondent.

PEEK, J.—Appellant Alves was charged with a violation of section 702 of the Welfare and Institutions Code, the specific acts alleged being that he wilfully aided and abetted a minor to be in a public place at the hour of 11:30 p.m. in violation of the curfew law of the city of Chico (Chico Municipal Code, § 684a), and that said act by the appellant caused the minor to come within section 700, subdivision (m), of the Welfare and Institutions Code. At the preliminary hearing appellant moved to dismiss the complaint upon the ground that the ordinance in question is unconstitutional. His motion was denied, and he thereafter sought a writ of prohibition in the superior court which was also denied. He now appeals from the order denying the same. He does not question the right of the city to adopt a curfew ordinance. The essence of his contention is that the ordinance in question is offensive to article I, section 1, of the California Constitution and to the Fourteenth Amendment to the Constitution of the United States, in that it unreasonably interferes with the exercise of personal rights guaranteed by the cited constitutional provisions.

Although no factual question is presented, it appears from the briefs that the appellant, aged 21, was sitting in an automobile at a drive-in restaurant with three other young persons, among whom was one Steve Lee Kirby who was under the age limit set out in said ordinance, but who was then married and emancipated from his parents' control.

The pertinent portions of the ordinance in question read as follows:

"Subdivision (a). It shall be unlawful for any minor under the age of seventeen years of age to be in or on any public street, park, square or any public place between the hours of 10:00 o'clock P.M. and 5:00 o'clock A.M. of the following day, except when and where said minor is accompanied by a parent or legal guardian having the care and custody of said minor, or where the presence of said minor in said place or places is connected with, and required by, some legitimate business, trade, profession or occupation in which said minor is engaged.

"Subdivision (b). Any person assisting, aiding, abetting or encouraging any minor under the age of seventeen years to violate the provisions of Subdivision (a) hereof shall be guilty of a misdemeanor; and when any minor is found violating the provisions of Subdivision (a) a presumption shall arise that the parent or legal guardian having the care and custody

of said minor assisted, aided, abetted and encouraged said minor in so violating said Subdivision (a)."

The language of subdivision (a) is clear and explicit in that all minors under the stated age are prohibited from being in or on a public street or place except those minors who are accompanied by a "parent or legal guardian" or those whose presence "on any public street, park, square or any public place" between the hours set forth "is connected with, and required by, some legitimate business, trade, profession or occupation in which said minor is engaged."

Appellant urges that the exception in the clause of said ordinance, "or where the presence of said minor in said place or places is connected with, and required by, some legitimate business, trade, profession or occupation in which said minor is engaged," encompasses only employment activities.

Respondent's answer to this argument is that if the words "legitimate business" are interpreted to have the broad meaning of "legitimate activity" the entire argument as to the restrictive effect of the statute must fail. In support thereof, they argue that Webster's New International Dictionary (2d ed. 1950) defines the word "business" in part to be "the quality or state of being busy," and since "busy" is defined in part as "engaged in some action on which one is intent; actively at work; occupied with serious affairs; not idle or at leisure; . . . active," that therefore construing the word "business" as used in the ordinance to have the usual and ordinary meaning, "permits an interpretation which gives full validity to the legislative intent while at the same time indicating a reasonable flexibility of conduct on the part of the minor." Respondent then concludes its argument with the comment: "An explanation of his presence late at night which shows a legitimate activity or reason would be a complete defense to the charge of violating the ordinance while preserving the spirit of the legislative intent."

Even if we were to assume the validity of respondent's argument that "legitimate business" as used in the ordinance must be interpreted to mean "legitimate activity," there is the further element not considered by respondent that the minor's presence also must be "required." In other words, even if it be said that presence at a high school or college basketball game, football game, dance, a theater or church was a "legitimate activity," certainly it would not be required. There could be little question that the minor's presence at such affair would be wholly voluntary, and no question at all

that the successful prosecution of the affair or activity required his presence.

It would appear that the words "legitimate business" as used in the ordinance must be read with the words which follow: "trade, profession or occupation in which said minor is engaged," and when so read it is quite apparent that they refer to employment. Even if this were not true and the interpretation of respondent was accepted, we would then be confronted with the obvious vagueness of the term "legitimate activity," and another constitutional question would be posed.

The rule is too well established to warrant citation of authority that a municipality, under its inherent police power, may enact legislation which may interfere with the personal liberties of its citizens and impose penalties for the violation thereof where the general welfare, public health and safety demand such enactment; but this rule is always subject to the rule of reasonableness in relation to the objects to be attained.

It is interesting to note that the parties have cited only two purely curfew ordinance cases; one, *Ex parte McCarver*, 39 Tex.Crim. 448 [46 S.W. 936, 42 L.R.A. 587, 73 Am.St. Rep. 946], which is referred to as "the first decision of a court of last resort on the question involved" in the footnote to 42 L.R.A. 587. The second is the case of *People* v. *Walton*, 70 Cal.App.2d Supp. 862 [161 P.2d 498], decided by the appellate department of the Los Angeles County Superior Court.

The McCarver case concerned a prohibition against minors under the age of 21 years being on the streets later than 15 minutes after the ringing of the curfew bell in the Baptist Church at 8:45 p.m. in the city of Graham, Texas, except if in the company of their parents or in search of the services of a physician. The ordinance was held unreasonable and void. The court specifically noted that the numerous reasons which were called to mind only served to bring into question the reasonableness of the law and concluded that it was an undue invasion of the liberty of the citizens of Graham.

In the Walton case, the prohibition was against a minor "who remains, or loiters" upon a public street or in a public place. The court there specifically noted that the provision in question was aimed at ". . . preventing such minors from tarrying and staying unnecessarily upon the streets and public places, and does not restrict those minors who are using or

in such streets or places while actually in the process of going to or from places of business or amusement or otherwise.'' (P. 866.) Obviously this was a far different situation from what is presented in the case before us.

Respondent, while placing reliance upon the Walton case, attacks the antiquity of the McCarver case and the reasoning therein as being out of step with modern authorities, but no other cases are cited to sustain the argument.

The McCarver case, however, antiquated as it may be, would seem to be much closer to the instant case than the Walton case. Here, as in the Texas case, the prohibition would not apply to a minor in the company of his parents. But while going for a doctor would have been valid in Texas, it would not have been in the present case; and while employment which would require a minor's presence on a street in Chico at night would be excepted in that ordinance, it would not have been under the Texas statute. And as regards the Walton case, it should be noted that the Los Angeles city ordinance had none of the broad restrictive provisions of either the McCarver or the present case.

Although the question presented was not the same—the ordinance related to dancing and the playing of dance music in homes as well as in public places—we believe the court in the case of *In re Hall*, 50 Cal.App. 786 [195 P. 975], ably stated the general rule applicable to cases such as the present where a statute is attacked as being unconstitutional in that it unduly and unreasonably interferes with personal rights. We have therefore chosen to quote at length from that decision. There it was held:

''It is for the law-making body to determine when an exigency exists for the exercise of the police power, but what are the subjects of its exercise is clearly a judicial question. The exercise of legislative discretion is not subject to review by the courts when measures adopted by the legislative department are calculated to protect the public health and secure the public comfort, safety or welfare; but the measures so adopted must have some relation to the ends thus specified. The law-making body of a municipality has no power, under the guise of police regulation, arbitrarily to invade the personal rights and personal liberty of the individual citizen. Its determination upon this question is not final or conclusive. If it pass an ordinance ostensibly in the exercise of the police power, but which in fact interferes unnecessarily with the personal liberty of the citizen, the

courts have a right to examine the law and see whether it relates to the objects which the exercise of the police power is designed to secure, and whether it is appropriate for the promotion of such objects. When the police power is exercised for the purpose of prohibiting a lawful amusement or regulating the manner in which it may be carried on or enjoyed, the law-making body is not the exclusive judge as to what is a reasonable and just restraint upon the constitutional right of the citizen to enjoy his personal rights and use his own property in his own way. The general right of every person to enjoy his own property and engage in any lawful and innocent amusement therein, and to do so in his own way, provided he does not encroach upon the rights of others, cannot be taken away from him by legislative enactment or municipal ordinance."

The court in that decision then went on to say:

"There is no certain test whereby the reasonableness of a police measure may be definitely measured in any given case. It is a matter resting in human judgment. So the line between what is reasonable and what is not, marking the bounds of the constitutional authority of the legislative department, is one often difficult of ascertainment, rendering it necessary, in all doubtful cases, for the judiciary to defer to the wisdom of the law-making body. But when the boundary has been plainly passed, the duty of the court to repel the encroachment and so uphold the constitution is absolute. It has no discretion in the matter. 'Reasonableness' is not synonymous with 'expediency.' Matters of expediency are wholly for legislative cognizance; while reasonableness is subject to judicial inquiry. As applied to a law, 'reasonableness' is manifestly not what extremists upon the one side or the other would deem fit and fair."

Measured by the rule expressed in the Hall case, the conclusion appears inescapable that the ordinance in question is invalid. There can be no question but that the purpose and intent in the enactment was the same as in the Walton case— a better control of juveniles during the late hours of the night. But to accomplish that purpose the ordinance completely prohibits all minors actually going to or coming from, or being at night classes, library study, games, dances or other school activities, church functions or the theater, to cite but a few examples. True, the ordinance would preclude aimless loitering by minors in public places during the hours set forth, but it would also make unlawful many other activi-

ties by minors which otherwise would be entirely lawful. ■ Paraphrasing the conclusion of the court in the Hall case, the general right of every person to enjoy and engage in lawful and innocent activity while subject to reasonable restriction cannot be completely taken away under the guise of police regulation. Any regulation to the contrary will be stricken down as an arbitrary invasion of the inherent personal rights and liberties of all citizens. ■ Thus, since it cannot be said that prohibition against the mere presence of a minor on a street or in a public place between the designated hours for a purpose other than required by his business, or unless accompanied by a parent or legal guardian, has any real or substantial relationship to the primary purpose of the statute, it therefore constitutes an unlawful invasion of personal rights and liberties, and for that reason is unconstitutional.

We find no merit in respondent's further argument in support of the order that if appellant ". . . is held to answer . . . trial and appeal . . . will provide him with a plain, speedy and adequate remedy," or . . . if he is imprisoned, he will have the added remedy of habeas corpus to test the validity of the ordinance and the legality of his being held." We know of no rule which would compel appellant to stand trial upon a complaint based on a void statute with the possibility of conviction of contributing to the delinquency of a minor and a fine of $1,000 or imprisonment in the county jail for two years, or both, and not be able to raise a question as to the constitutionality of ordinances under which he was compelled to go to trial until after his conviction. ■ An unconstitutional statute goes to the very jurisdiction of the court, and hence may be attacked at any stage of the proceedings.

The order is reversed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied March 6, 1957, and respondent's petition for a hearing by the Supreme Court was denied April 2, 1957.