[No. 42313.    En Banc.    September 27, 1973.]

THE CITY OF SEATTLE, *Respondent*, v. RONNY GENE PULLMAN, *Appellant*.

*Rutherford, Kargianis & Austin*, by *Russell A. Austin, Jr.*, for appellant.

*A. L. Newbould, Corporation Counsel,* and *Myron L. Cornelius, Assistant,* for respondent.

UTTER, J.—Defendant Ronny Gene Pullman was charged and convicted in both Seattle Municipal Court and on appeal in superior court with violation of a Seattle ordinance which prohibits accompanying a child during curfew hours.[1]

We find the ordinance unconstitutional on two grounds. It is first too vague, and due process is violated where persons of common intelligence must guess at its meaning at the peril of their liberty. It secondly is an invalid exercise of the city's police power because it makes no distinction between conduct calculated to harm and that which is essentially innocent. By the language of this statute, any minor under the age of 18 could be arrested for standing or playing on the sidewalk in front of his home at 10:01 p.m. on a warm summer evening.

We do not prohibit the state from imposing reasonable controls on the conduct of minor children during evening

[1] 12.40.040 (section 4 of ordinance No. 95984). "It is unlawful for anyone not the parent or guardian of any child under the age of eighteen years, or anyone not having the express consent of such parent or guardian, to be with or accompany any such child who at the time is violating Section 12.40.020."

12.40.020 (section 2 of ordinance No. 95984). "Loitering during curfew hours. It is unlawful for any minor child under the age of eighteen years to loiter, idle, wander or play on or in the streets, sidewalks, highways, alleys, parks or other public places or in an automobile or other conveyance or in or upon unoccupied premises or grounds during curfew hours: Provided, that a minor child shall not be deemed to be loitering, idling, wandering, or playing where such minor child is accompanied by his or her parent or guardian, or is traveling by direct route to or from work in the regular course of employment where such occupation and employment have been approved by authorities pursuant to state law and such child has in his possession evidence of such approval, or is travelling by direct route to or from activities duly sponsored by religious or educational organizations, or is sent by his parent or guardian on some lawful business or errand, in which case such child shall have with him the written consent of his parent or guardian."

hours, but do require a constitutionally precise statement of both the criminal activity and the conduct calculated to harm from which the state seeks to protect itself.

Defendant Pullman, a high school senior, was arrested at approximately 4:30 a.m. on May 23, 1971 after the arresting officer observed, followed, and stopped the defendant in his automobile because the vehicle was emitting excessive amounts of noise. After stopping the vehicle, the officer discovered that it lacked a proper muffler and that the defendant accompanied two minor females. The defendant had attended a party with the two minor girls and told the arresting officer they "had decided to take a drive around the beach before going home." There is no evidence that the defendant's vehicle was wandering, or that the passengers were loitering or idling or playing.

■ The defendant has standing to challenge the constitutionality of sections 2 and 4 of ordinance No. 95984. One of the necessary elements for conviction for accompanying a child during curfew hours under section 4 is an actual violation by the minor of the curfew ordinance, section 2. His conviction cannot stand without a determination that a valid curfew ordinance was violated.

As this court most recently stated in *Tarver v. City Comm'n*, 72 Wn.2d 726, 735, 435 P.2d 531 (1967):

> A litigant who challenges the validity of an ordinance must claim infringement of an interest peculiar and personal to himself, as distinguished from a cause of dissatisfaction with the general framework of the ordinance. *State v. Lundquist*, 60 Wn. (2d) 397, 401, 374 P. (2d) 246 (1962) and cases cited.

The defendant has claimed such an infringement and has standing to challenge the entire ordinance.

Those cases[2] cited by the city in its challenge to the defendant's standing to question the constitutionality of the

---

[2]*Tarver v. City Comm'n*, 72 Wn.2d 726, 435 P.2d 531 (1967); *Seattle v. Long*, 61 Wn.2d 737, 380 P.2d 472 (1963); *State v. Lundquist*, 60 Wn.2d 397, 374 P.2d 246 (1962); *State v. Rowe*, 60 Wn.2d 797, 376 P.2d 446 (1962); *State v. Bowman*, 57 Wn.2d 266, 356 P.2d 999 (1960).

curfew ordinance are not contrary to our holding here because the validity of the ordinance or statute therein questioned did not infringe upon any of the complainant's personal interests. However, here the defendant's constitutional challenge cannot be rejected, for the ordinance under which he was charged, section 4, contains as one of its elements the challenged provision, the curfew ordinance, section 2. *Alves v. Justice Court,* 148 Cal. App. 2d 419, 306 P.2d 601 (1957).

█ Defendant claims that section 2 is vague and an unreasonable exercise of the city's police power and therefore unconstitutional. We agree. The concept of "void for vagueness" is born out of the constitutional due process requirements of fair notice,[3] and of clear standards in laws to prevent arbitrary and discriminatory enforcement by police and inconsistent application by judges and juries.[4]

It is fundamental that no ordinance which requires persons of common intelligence to guess at its meaning at the peril of life, liberty, or property may constitutionally be permitted to stand. "All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 83 L. Ed. 888, 59 S. Ct. 618 (1939).

[3] *Papachristou v. Jacksonville,* 405 U.S. 156, 162, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972); *Cramp v. Board of Pub. Instruction,* 368 U.S. 278, 287, 7 L. Ed. 2d 285, 82 S. Ct. 275 (1961); *United States v. Harriss,* 347 U.S. 612, 617, 98 L. Ed. 989, 74 S. Ct. 808 (1954); *Jordan v. De George,* 341 U.S. 223, 230-32, 95 L. Ed. 886, 71 S. Ct. 703 (1951); *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 83 L. Ed. 888, 59 S. Ct. 618 (1939); *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 70 L. Ed. 322, 46 S. Ct. 126 (1926); *United States v. L. Cohen Grocery Co.,* 255 U.S. 81, 89, 65 L. Ed. 516, 41 S. Ct. 298, 14 A.L.R. 1045 (1921); *International Harvester Co. v. Kentucky,* 234 U.S. 216, 223-24, 58 L. Ed. 1284, 34 S. Ct. 853 (1914).

[4] *Papachristou v. Jacksonville, supra; Coates v. Cincinnati,* 402 U.S. 611, 614, 29 L. Ed. 2d 214, 91 S. Ct. 1686 (1971); *Interstate Circuit, Inc. v. Dallas,* 390 U.S. 676, 684-85, 20 L. Ed. 2d 225, 88 S. Ct. 1298 (1968); *Ashton v. Kentucky,* 384 U.S. 195, 200, 16 L. Ed. 2d 469, 86 S. Ct. 1407 (1966); *Shuttlesworth v. Birmingham,* 382 U.S. 87, 90-91, 15 L. Ed. 2d 176, 86 S. Ct. 211 (1965); *Saia v. New York,* 334 U.S. 558, 559-60, 92 L. Ed. 1574, 68 S. Ct. 1148 (1948); *Thornhill v. Alabama,* 310 U.S. 88, 97-98, 84 L. Ed. 1093, 60 S. Ct. 736 (1940); *Herndon v. Lowry,* 301 U.S. 242, 261-64, 81 L. Ed. 1066, 57 S. Ct. 732 (1937).

The first essential of due process is violated where citizens, law enforcement officers, or the finder of guilt (be it jury or judge) must speculate as to the standards of guilt because of the vagueness of the ordinance or statute.

■ On the language here at issue—"to loiter, idle, wander or play"—*Seattle v. Drew*, 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967), is controlling. In *Drew*, on the grounds the ordinance was vague and beyond the municipal police powers, we struck down the Seattle ordinance making it a crime for persons loitering abroad, or abroad under suspicious circumstances, to fail to give a satisfactory account of themselves upon demand by a police officer. After providing the dictionary meanings of "loiter" and "wander" we found "the lay meaning of loitering cannot reasonably connote unlawful activity." *Seattle v. Drew*, *supra* at 409. In so doing, we cited with approval the finding in *Hawaii v. Anduha*, 48 F.2d 171, 173 (9th Cir. 1931) that the words idle, loiter, loaf "have no sinister meaning and imply no wrongdoing or misconduct on the part of those engaged in the prohibited practices." We again affirm this ruling, as we recently did in *State v. Oyen*, 78 Wn.2d 909, 480 P.2d 766 (1971).[5]

As in *Drew*, we have "the word[s] standing alone, or otherwise unqualified by ascertainable standards . . ." *State v. Oyen, supra* at 916. It is true that *Drew* involved loitering in "suspicious circumstances" but if the term "loiter" is deemed vague when attached to such a qualifying phrase, it certainly is no more precise standing alone. Nor does the proviso of section 2 cure the vagueness infirmity plaguing the words involved herein. The proviso's four cir-

[5]The United States Supreme Court in *Oyen v. Washington*, 408 U.S. 933, 33 L. Ed. 2d 745, 92 S. Ct. 2846 (1972), vacated our judgment in *Oyen* and remanded the case for further consideration in light of *Police Dep't v. Mosley*, 408 U.S. 92, 33 L. Ed. 2d 212, 92 S. Ct. 2286 (1972) and *Grayned v. Rockford*, 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972). By supplemental judgment of August 2, 1972, the case has been remanded to the Superior Court for Whatcom County for reconsideration. However, *Oyen*'s affirmance of the *Drew* analysis herein used is not affected by that reconsideration.

cumstances under which there can be no finding of "loitering, idling, wandering or playing" are not exhaustive and fail to account for the many other possible "innocent" acts. Thus, the proviso's presentation of a number of protected situations does not make sufficiently more precise the ordinance's language of prohibition. *See Ex parte McCarver,* 39 Tex. Crim. 448, 46 S.W. 936 (1898).

The words "loiter, idle and wander" are embraced by the aforementioned authority and only "play" must be decided in this case and we find it innocent behavior, for the lay meaning of play also cannot reasonably connote unlawful activity.

Since the words "to loiter, idle, wander or play" do not provide ascertainable standards for locating the line between innocent and unlawful behavior, the ordinance is void for its "unconstitutional uncertainty." Collings, *Unconstitutional Uncertainty—An Appraisal,* 40 Cornell L.Q. 195 (1955); Note, *Due Process Requirements of Definiteness in Statutes,* 62 Harv. L. Rev. 77 (1948).

■ It is no answer to a finding of vagueness that good faith actions by law enforcement will result in only the proper exercise of this penal ordinance. As we stated in *Drew* at pages 409-10:

> This assurance, however, does not save the ordinance because "well intentioned prosecutors . . . do not neutralize the vice of a vague law." *Baggett v. Bullitt,* 377 U.S. 360, 373, 12 L. Ed. 2d 377, 84 Sup. Ct. 1316 (1964).

■ Regulation in this area must not only be in compliance with due process standards, but must come within the police power authority of the government. For the exercise of the police power to be valid, the area of regulation must be within the government's scope of authority and the particular ordinance must be a reasonable regulatory measure in support of the area of concern. *Markham Advertising Co. v. State,* 73 Wn.2d 405, 420-22, 439 P.2d 248 (1968); *Ragan v. Seattle,* 58 Wn.2d 779, 364 P.2d 916 (1961). If the regulated area exceeds the scope of the police power authority, or if the ordinance's prohibitions do not have a real and

substantial relationship to the government's interest, the ordinance is unconstitutional.

■ We recognize the government has an independent interest in the well-being of its youth and may in certain situations enact laws to assist those whose primary responsibility is for the well-being of minors. *Ginsberg v. New York*, 390 U.S. 629, 639, 20 L. Ed. 2d 195, 88 S. Ct. 1274 (1968). However, ordinances and statutes designed to further such interests must reasonably relate to their purpose and do so without violating protected rights. As we emphasized in *Drew*, at page 408: "It is fundamental that no ordinance may unreasonably or unnecessarily interfere with a person's freedom, whether it be to move about or to stand still."

We have already found that the ordinance because of its vagueness violates due process and now, in addition, that it bears no real or substantial relationship to the proclaimed governmental interest—the protection of minors.

This ordinance makes no distinction between conduct calculated to harm and that which is essentially innocent and is thereby an unreasonable exercise of the police power. As we stated in *Drew*, at page 408:

> The right to be let alone is inviolate; interference with that right is to be tolerated only if it is necessary to protect the rights and the welfare of others.

"Prima facie, mere sauntering or loitering on a public way is lawful and the right of any man, woman, or child." *Commonwealth v. Carpenter*, 325 Mass. 519, 521, 91 N.E.2d 666 (1950). Other jurisdictions have uniformly struck down mere "loitering-type" conduct ordinances. *See Cleveland v. Baker*, 83 Ohio L. Abs. 502, 167 N.E.2d 119 (1960); *People v. Diaz*, 4 N.Y.2d 469, 176 N.Y.S.2d 313, 151 N.E.2d 871 (1958); *Soles v. Vidalia*, 92 Ga. App. 839, 90 S.E.2d 249 (1955); *Commonwealth v. Carpenter, supra*; the famous case of *Hawaii v. Anduha*, 48 F.2d 171 (9th Cir. 1931) (cited with approval in *Drew*); *St. Louis v. Gloner*, 210 Mo. 502, 109 S.W. 30 (1908).

A unanimous United States Supreme Court opinion, in

striking down a vagrancy ordinance, stated strongly its view on those ordinances prohibiting activities such as walking, strolling, wandering, loitering, and loafing:

[T]hese . . . are historically part of the amenities of life as we have known them. They are not mentioned in the Constitution or in the Bill of Rights. These unwritten amenities have been in part responsible for giving our people the feeling of independence and self-confidence, the feeling of creativity. These amenities have dignified the right of dissent and have honored the right to be nonconformists and the right to defy submissiveness. They have encouraged lives of high spirits rather than hushed, suffocating silence.

. . .

A presumption that people who might walk or loaf or loiter or stroll or frequent houses where liquor is sold, or who are supported by their wives or who look suspicious to the police are to become future criminals is too precarious for a rule of law.

*Papachristou v. Jacksonville*, 405 U.S. 156, 164, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972). *See also* Lacey, *Vagrancy and Other Crimes of Personal Condition*, 66 Harv. L. Rev. 1203 (1953) for discussion of the historical connection between modern loitering ordinances and common-law vagrancy.

The Jacksonville ordinance, like the one in *Drew*, and the one now before us, attempt to make criminal, activities which are normally deemed innocent. This the municipality cannot do under the claim of its police power. The fact that we have a minor curfew ordinance, in which the above innocent behavior is prohibited, does not alter the conclusion. The government has an interest to protect minors from "abuses" (*Prince v. Massachusetts*, 321 U.S. 158, 165, 88 L. Ed. 645, 64 S. Ct. 438 (1944)), but what are the abuses here? It cannot be said that prohibition against the mere loitering, wandering, idling or playing of a minor in a public place or conveyance during the curfew hours (but for the circumstances exempted in the proviso) has the requisite connection to the ordinance's alleged purpose of protecting minors. We must speculate as to the abuses to be

avoided, but the invasion of protected freedoms is not speculation, it is very real.

There has been no showing whatsoever, in the case before us, that the alleged curfew violators' conduct or that of the defendant's interfered with the rights and welfare of others. The record reveals no improper operation of the automobile by the defendant, nor any impermissible conduct by any of those involved. On being questioned by the officer, the two minor females stated that they were heading home after a party. The record is absolutely devoid of any evidence showing "bad conduct". The defendant's automobile was stopped because of excessive noise and the mere fact that the defendant was in the presence of two minors during curfew hours resulted in this prosecution.

Moreover, the record does not disclose whether the alleged curfew violators did or did not have the consent of their parents or guardian to be out in the company of defendant or out during curfew hours. Assuming permission was present in the case before us, unless it was given within the narrow and limited parameters of the section 2 proviso, this ordinance nevertheless would permit the arrest, prosecution and conviction of these two minor females. Such an ordinance, claimed to support the discharge of parental responsibility, can operate despite parental supervision and thus in derogation of the parental responsibility for their children.

This ordinance, as drafted, goes beyond the scope of legitimate police power authority. *Lazarus v. Faircloth*, 301 F. Supp. 266 (S.D. Fla. 1969); *Alves v. Justice Court*, 148 Cal. App. 2d 419, 306 P.2d 601 (1957). We find, therefore, that ordinance No. 95984, as drafted, has an insufficient relationship to the objective of safeguarding minors and is unconstitutional.

General curfew ordinances have been found valid when imposed in emergency circumstances to restore public order. *United States v. Chalk*, 441 F.2d 1277 (4th Cir. 1971); *Ervin v. State*, 41 Wis. 2d 194, 163 N.W.2d 207 (1968); *Glover v. District of Columbia*, 250 A.2d 556 (D.C.

App. 1969). Note, *Judicial Control of the Riot Curfew*, 77 Yale L.J. 1560 (1968). Similarly, minor curfew ordinances may be permissible where they are specific in their prohibition and necessary in curing a demonstrable social evil. Note, *Curfew Ordinances and the Control of Nocturnal Juvenile Crime*, 107 U. Pa. L. Rev. 66 (1958).

For each of the reasons we have stated, the defendant's conviction is reversed.

FINLEY, ROSELLINI, HAMILTON, STAFFORD, and BRACHTEN-BACH, JJ., concur.

HUNTER, J. (dissenting)—The majority states the defendant, Ronny Gene Pullman, cannot be convicted unless there is a determination of an actual violation of a valid curfew ordinance by the minor girls who were in his company. I believe the undisputed evidence shows the ordinance was violated by the minor 15-year-old girls, and that the ordinance is valid.

The record clearly shows that the defendant told the police officer that they (he and the two minor girls) "had decided to take a drive around the beach before going home" at this late hour in the morning. Clearly, this conduct comes within the meaning of the prohibition of the ordinance (Seattle Code 12.40.020), providing:

> It is unlawful for any minor child under the age of eighteen years to loiter, idle, wander or play on or in the streets, sidewalks, highways, alleys, parks or other public places *or in an automobile* or other conveyance or in or upon unoccupied premises or grounds during curfew hours: Provided, that a minor child shall not be deemed to be loitering, idling, wandering, or playing where such minor child is accompanied by his or her parent or guardian, or is travelling by direct route to or from work in the regular course of employment where such occupation and employment have been approved by authorities pursuant to state law and such child has in his possession evidence of such approval, or is travelling by direct route to or from activities duly sponsored by religious or educational organizations, or is sent by his parent or guardian on some lawful business or errand, in which case

such child shall have with him the written consent of his parent or guardian.

(Italics mine.)

Seattle Code 12.40.040 states:

It is unlawful for anyone not the parent or guardian of any child under the age of eighteen years, or anyone not having the express consent of such parent or guardian, to be with or accompany any such child who at the time is violating Section 12.40.020. For the purposes of this section, such "express consent" shall be a defense to any charge under this section.

The majority states there is no evidence that the children were not acting with the consent of their parents. It is implicit that this conduct was not with the consent of the parents as admittedly they were acting by reason of their own decisions, and furthermore, it would be difficult to imagine that responsible parents would give their consent for their 15-year-old daughter to be driving around on the beaches with an older boy after attending a party at the late hour of 4:30 in the morning. Moreover, even with the consent of the parents, this sojourn on the beaches would not come within the exceptions in the proviso of the ordinance.

The defendant contends that the Seattle curfew ordinance, in its entirety, is an abridgment of certain constitutionally guaranteed rights of citizenship, including among others: (1) freedom of association; (2) freedom of movement; (3) freedom from discriminatory class legislation; and (4) the right to due process in the form of a clear and understandable law, with which the majority agrees, except item three which it did not discuss.

In analyzing the defendant's contentions certain general propositions of law must be kept in mind.

First, when the constitutionality of an ordinance is challenged, it will be presumed constitutional and valid until the contrary clearly appears. *State v. Dixon,* 78 Wn.2d 796, 479 P.2d 931 (1971), and cases cited therein. Furthermore, when two interpretations of a statute are possible, one

which is constitutionally valid and the other constitutionally invalid, the court will adopt the construction upholding its validity. *State v. Dixon, supra,* and cases cited therein.

Second, it is well established that the local police power of cities is the same as the police power of the state, except as restricted by legislative enactments of the state. *Patton v. Bellingham,* 179 Wash. 566, 38 P.2d 364 (1934), and cases cited therein. It is also well established that legislative bodies have broad discretion in enacting ordinances under their police power. *Reesman v. State,* 74 Wn.2d 646, 445 P.2d 1004 (1968), and cases cited therein. We stated in *Reesman* on page 650:

> Unless the measures adopted by the legislature in given circumstances are palpably unreasonable and arbitrary so as to needlessly invade property or personal rights as protected by the constitution, the legislative judgment will prevail.

*See also Hass v. Kirkland,* 78 Wn.2d 929, 481 P.2d 9 (1971).

Third, "the state's authority over children's activities is broader than over like actions of adults." *Prince v. Massachusetts,* 321 U.S. 158, 88 L. Ed. 645, 64 S. Ct. 438 (1944). "What may be wholly permissible for adults may not be so for children either with or without their parents' consent." *Prince v. Massachusetts, supra. See also Ginsberg v. New York,* 390 U.S. 629, 20 L. Ed. 2d 195, 88 S. Ct. 1274 (1968).

With this background as a reference, let us turn to the merits of the issues presented by the defendant to determine if the city's legislation is so unreasonable and arbitrary as to interfere needlessly with the personal rights of the defendant.

The defendant contends that the Seattle curfew ordinance violates his First Amendment right of freedom of association as applied by the Fourteenth Amendment to the states. In considering this contention, it is necessary to observe the manifest distinction between the right of the state to regulate children's conduct and that of adults. The United States Supreme Court in *Prince* clearly recognized this distinction. There the defendant was convicted of fur-

nishing her 9-year-old niece, of whom the defendant was custodian, with religious literature to sell on the streets in contravention of Massachusetts' statutes which prohibited young ladies under the age of 18 from selling literature on the streets and furnished sanctions upon persons supplying literature to minors for resale on the streets. The defendant based her appeal to the United States Supreme Court on the contention that said statute was in violation of her right to teach her child the tenets and practices of her faith and in violation of the child's right to observe the preaching of the gospel by public distribution. The defendant also contended that the statute was in contravention of her parental right as secured by the due process clause of the fourteenth amendment to the United States Constitution. In this case, the Supreme Court balanced the individual's private interests against the interest of society in its youth and held:

> We think that with reference to the public proclaiming of religion, upon the streets and in other similar public places, *the power of the state to control the conduct of children reaches beyond the scope of its authority over adults, as is true in the case of other freedoms, and the rightful boundary of its power has not been crossed* . . .

(Italics mine.) *Prince v. Massachusetts*, 321 U.S. 158, 170, 88 L. Ed. 645, 64 S. Ct. 438 (1944).

As I read the Seattle curfew ordinance, a child under the age of 18 may not "loiter, idle, wander or play" after 10 p.m. in the listed areas. The Seattle curfew ordinance does not restrict the rights of the included minors from going upon the streets or other listed areas between the specified hours but only from "loitering, idling, wandering or playing" in the given areas.

Against this interest of the children of Seattle we must balance the interest of society in having mature, well balanced citizens. As stated in *Prince v. Massachusetts, supra* at 165:

> To make accommodation between these freedoms and

an exercise of state authority always is delicate . . . Against these sacred private interests, basic in a democracy, stand the interests of society to protect the welfare of children . . . It is the interest of youth itself, and of the whole community, that children be both safeguarded from abuses and given opportunities for growth into free and independent well-developed men and citizens.

The Supreme Court of the United States recognized in the *Ginsberg* case that parental control and guidance is not always provided and that the interest of society in protecting its youth justifies reasonable regulation of the conduct of children. We can take judicial notice that children without purpose wandering about the streets at all hours of the night often leads to mischief to their detriment and to the members of society who, in some instances, become victims of mugging and assaults, robberies and other violent crimes committed by juveniles. Suffice to say, the rightful boundary of the city in restricting the activities of the child in the instant case is in the best interest of society and the child itself, and the rightful boundary of the city's police power has not been crossed.

The city's exercise of its police power in this instance appears to bear a reasonable relationship to the evil it seeks to prevent and thus should be sustained. *See Hass v. Kirkland, supra,* and cases cited therein.

The defendant contends that the Seattle curfew ordinance restricts his freedom of movement guaranteed under the fifth amendment to the United States Constitution. The same reasoning and logic applies to this argument as applies to the defendant's argument under the first amendment to the constitution. The narrow limitation placed on the movement of the child must be balanced against society's interest in its youth. As *Prince v. Massachusetts, supra,* indicates, reasonable grounds exist for the legislation. Thus, this enactment should be sustained.

The defendant also contends that the Seattle curfew ordinance is unconstitutionally vague. He cites, as does the

majority, *Seattle v. Drew,* 70 Wn.2d 405, 408, 423 P.2d 522, 25 A.L.R.3d 827 (1967), for the proposition that:

A law that fails to give fair notice of what acts will be punished is violative of due process.

The defendant argues that the words "loiter, idle, wander, or play" as used in the Seattle curfew ordinance do not give fair notice of what acts will be punished, relying on *Seattle v. Drew, supra,* as an authority. To the contrary, I find the *Drew* case a complete answer to this contention.

Specifically, the Seattle curfew ordinance prohibits any minor under the age of 18 from "loitering, idling, wandering or playing" on or in the streets, sidewalks, etc., between the hours of 10 p.m. and 5 a.m. Words in this type of ordinance are to be given their ordinary lay meaning. In the *Drew* case we determined that the word "loiter" as defined by *Webster's Third New International Dictionary* (1961) meant:

fritter away time . . . be . . . unduly slow in doing something . . . remain in or near a place in an idle or apparently idle manner . . .

And the word "wander" as defined by said dictionary meant: "to move about without a fixed course, aim, or goal . . ." We then determined that said words do not connote any type of unlawful activity. In that case, the ordinance in question did not make any attempt to distinguish, define, or restrict the meaning of the words in question. In the instant case, the city has stated that all "frittering away of time, or moving about without a fixed course, or idling or playing" is prohibited by children under the age of 18 after 10 p.m. in the listed areas. Then to insure that the officers will have guidelines to determine whether or not a given child is "frittering away his time or moving about without a fixed goal," etc., the city has gone to great lengths to spell out what types of behavior will not be deemed wandering, idling, loitering or playing. Thus going to and from work by a direct route is not within the ambit of the ordinance. Nor is going by a direct route to activities

sponsored by religious or educational organizations. Nor is running an errand within the ambit where one has written parental consent and is about some lawful business. So, too, a child accompanied by a parent or guardian after 10 p.m. is not within the ambit. The list of exceptions to the curfew ordinance is not all inclusive, to it could probably be added numerous other exceptions. However, the listed exceptions demonstrate by their very nature the types of activities which are outside the proscribed behavior. As we stated in the *Drew* case on page 410: "The law should be so drawn as to make it inapplicable to cases which obviously are not intended to be included within its terms." The Seattle City Council has done just this in designing the Seattle curfew ordinance.

The fact that the Seattle curfew ordinance prohibits all "loitering, idling, wandering or playing," and then provides examples of the type of behavior that is not within this category, distinguishes the instant case from the *Drew* case. In that case the defendant challenged the validity of Seattle Code 12.11.290, which provided:

> It shall be unlawful for any person wandering or loitering abroad, or abroad under other suspicious circumstances, from one-half hour after sunset to one-half hour before sunrise, to fail to give a satisfactory account of himself upon the demand of any police officer.

The defendant contended that the terms of the ordinance were unconstitutionally vague. We agreed with the defendant and stated on page 410:

> There is nothing in the ordinance that would enable him to know the dividing line between innocent loitering (for example window shopping) and criminal loitering. Loitering ordinances that fail to spell out this distinction have been struck down.

*Seattle v. Drew*, 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967).

In the instant case, the city has provided a dividing line between criminal loitering and innocent loitering. All loitering is unlawful under the Seattle curfew ordinance. In

order to avoid its force between the hours of 10 p.m. and 5 a.m., one must be in a direct route to or from a given activity unless accompanied by a parent. We are not dealing with a satisfactory account type of ordinance as in the *Drew* case, nor are we dealing with "under suspicious circumstances." There is nothing ambiguous about the Seattle curfew ordinance. It clearly states that children under the age of 18 after 10 p.m. must not "loiter, idle, wander or play" in the listed areas. If children are not in a direct route to or from a given activity and are in the listed areas, then they are "loitering, idling, wandering, or playing."

The defendant also contends that the Seattle curfew ordinance is in violation of Const. art. 1, § 12, and the fourteenth amendment to the United States Constitution, in that it purports to grant, and withhold, basic freedoms from one class of citizens and not another.

We stated in *State ex rel. O'Brien v. Towne*, 64 Wn.2d 581, 582, 392 P.2d 818 (1964), and cases cited therein, that:

> The provisions of the state and federal constitutions which prohibit the granting of special privileges and immunities and guarantee equal protection of the laws, require that *class legislation must apply alike to all persons within a class, and reasonable ground must exist for making a distinction between those within and those without a designated class*; but within the limits of such restrictive rules, the legislature has a wide measure of discretion, and its determination, when expressed in statutory enactment, cannot be successfully attacked unless it is manifestly arbitrary, unreasonable, inequitable, and unjust.

(Italics mine.) In the instant case, the legislation applies alike to all persons under the age of 18. *Prince v. Massachusetts, supra,* indicates that reasonable grounds exist for designing legislation to protect children. The growth of a child is a gradual process. Children reach maturity at various ages. Therefore, the legislative determination that the age of 18 provides a basis for distinguishing between children and adults does not appear manifestly arbitrary, unreasonable, inequitable or unjust and thus should be sus-

tained. *See Hass v. Kirkland,* 78 Wn.2d 929, 481 P.2d 9 (1971).

In summary, there can be little doubt that the legislative authority of Seattle, by the enactment of the curfew ordinance, intended to exercise reasonable restraints on minor children wandering and loitering on the streets or in automobiles at any hour of the night, to correct the evils of mischief and the potential commission of crimes resulting therefrom, to the detriment of both the children and society.

The judgment of the trial court should be affirmed.

HALE, C.J., and WRIGHT, J., concur with HUNTER, J.