IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| CITY OF SEATTLE, | No. 82739-1-I |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| DARYL RUDRA SHARMA, | |
| Respondent. | |

BOWMAN, J. — A jury convicted Daryl Rudra Sharma in Seattle Municipal Court of sexual exploitation under former Seattle Municipal Code (SMC) 12A.10.040(A)(2) (Seattle Ordinance (SO) 125345, § 4 (July 14, 2017)).[1] Sharma appealed to the superior court, arguing that the ordinance is unconstitutionally overbroad and vague and that sufficient evidence did not support his conviction. The court did not address those arguments. Instead, it determined the jury instructions were constitutionally deficient and reversed Sharma's conviction. The city of Seattle (City) appealed. On appeal, we reversed the superior court and remanded the case for the court to consider Sharma's constitutional and sufficiency arguments. On remand, the superior court again did not address Sharma's arguments. It determined that former SMC 12A.10.040(A)(2) amounts to a strict liability crime that punishes wholly innocent and passive nonconduct and violates due process under State v. Blake, 197

---

[1] Repealed by SO 125881, § 12 (Aug. 9, 2019).

Citations and pin cites are based on the Westlaw online version of the cited material.

Wn.2d 170, 481 P.3d 521 (2021). The City again appeals. We conclude that former SMC 12A.10.040(A)(2) does not violate due process because agreeing to pay for sex is conduct that bears a reasonable and substantial relation to the objective of regulating prostitution. We reverse and remand for the superior court to decide the constitutional and sufficiency issues raised in Sharma's appeal.

FACTS

In July 2017, Seattle Police Detective Ashley Fitzgerald was working undercover as a sex worker. On the evening of July 30, as Fitzgerald walked along Aurora Avenue North, she saw Sharma sitting at a bus stop. She asked him if he "was looking for a date." Sharma said, " 'Yes, actually I was wondering if I could give you a call. I don't have any money right now.' " Fitzgerald said, " 'Sure,' " and asked Sharma, " '[W]hat are you looking for.' " Sharma responded, " 'I don't know. Maybe a blow job or something.' " Fitzgerald told him she "could do that for $20."

Fitzgerald signaled other officers to arrest Sharma while the conversation continued. She testified:

> He asked me what my name was. I told him my name was Candy and then he said, "Oh, well that should taste good then." And then he asked for my phone number, and I provided him a fake phone number which I saw him put into his phone. And then I confirmed, "So, I'll meet you back here later then, a blow job for $20." And he said yes.

Fitzgerald then left and the other officers arrested Sharma.

The City charged Sharma with sexual exploitation under former SMC 12A.10.040(A)(2) for "agreeing to pay a fee to another person pursuant to an understanding that in return therefor such person will engage in sexual conduct

2

with him." The jury convicted Sharma as charged. The court imposed a 90-day jail sentence with 30 days suspended and granted Sharma's request to stay the sentence pending an appeal.

Sharma appealed to King County Superior Court, arguing that former SMC 12A.10.040(A)(2) is unconstitutionally overbroad and vague. He also challenged the sufficiency of the evidence to prove each element of sexual exploitation beyond a reasonable doubt. But the superior court did not reach these issues. Instead, the court decided that the jury instructions denied Sharma a fair trial under the due process clause of the Washington Constitution, article I, section 3. The court reversed the jury verdict and remanded the case to the Seattle Municipal Court for a new trial.

The City appealed. We determined that the superior court erred by concluding that the jury instructions violated Sharma's due process rights. City of Seattle v. Sharma, No. 80022-1-I, slip op. at 7-8 (Wash. Ct. App. Dec. 14, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/800221.pdf. We reversed and remanded for the superior court to consider Sharma's overbreadth, vagueness, and sufficiency claims. Id. at 8.

On remand, the superior court again did not reach these issues. Instead, it instructed the parties to provide supplemental briefing on the "impact of the Washington Supreme Court's recent decision in State v. Blake." Sharma argued that under Blake, former SMC 12A.10.040(A)(2) is invalid because it is a strict liability ordinance that criminalizes wholly innocent and passive nonconduct. The superior court agreed. It stated that the decision in Blake "profoundly changed

3

the legal landscape in Washington when it comes to strict liability offenses." And it concluded that former SMC 12A.10.040(A)(2) violates due process because it "criminalizes wholly innocent and passive nonconduct" by punishing the "mere agreement" to pay for sex without the exchange of money. The superior court again reversed the jury verdict and remanded to the municipal court.

The City appeals.

ANALYSIS

The City argues that the superior court erred in determining that Seattle's sexual exploitation ordinance violates due process under Blake. We agree.

The interpretation of constitutional provisions and legislative enactments, including municipal ordinances, presents a question of law we review de novo. State v. Immelt, 173 Wn.2d 1, 6, 267 P.3d 305 (2011); City of Spokane v. Rothwell, 166 Wn.2d 872, 876, 215 P.3d 162 (2009). We presume an ordinance is constitutional, and the challenging party must prove otherwise beyond a reasonable doubt. Kitsap County v. Mattress Outlet, 153 Wn.2d 506, 509, 104 P.3d 1280 (2005).

The government has a legitimate interest in restraining harmful conduct, and its police powers enable it to do so. See State v. Talley, 122 Wn.2d 192, 199, 858 P.2d 217 (1993). But the "constitutional protection afforded [to] certain personal liberties" limits those powers. Id. For example, a criminal conviction generally requires the government to prove a mens rea—a "guilty mind." Blake, 197 Wn.2d at 179-81; Staples v. United States, 511 U.S. 600, 605, 114 S. Ct. 1793, 128 L. Ed. 2d 608 (1994).

4

But the government may enact strict liability laws to " 'protect the public from the harms that have come with modern life by putting the burden of care on those in the best position to avoid those harms.' " Blake, 197 Wn.2d at 179 (quoting State v. Yishmael, 195 Wn.2d 155, 164, 456 P.3d 1172 (2020)). Such laws must bear " 'a reasonable and substantial relation to the accomplishment of some purpose fairly within the legitimate range or scope of the police power and [must] not violate any direct or positive mandate of the constitution.' " Id. at 178[2] (quoting Ragan v. City of Seattle, 58 Wn.2d 779, 783, 364 P.2d 916 (1961)). A strict liability law that criminalizes wholly passive and innocent nonconduct is unrelated to accomplishing a legitimate government purpose and violates due process. Id. at 182-83.

Under former SMC 12A.10.040(A)(2), a person is guilty of sexual exploitation if he "pays or agrees to pay a fee to another person pursuant to an understanding that in return therefor such person will engage in sexual conduct with him."[3] Citing Blake, Sharma argues that former SMC 12A.10.040(A)(2) violates due process because it is a strict liability law that criminalizes wholly innocent and passive nonconduct.

---

[2] Alteration in original.

[3] Sharma argues that former SMC 12A.10.040(A)(2) is an "outlier" among the states because other statutes either "contain explicit mens rea elements, courts read such elements into the statutes, or the statutes require proof the defendant committed some kind of overt act." But former SMC 12A.10.040(A)(2) uses language identical to Washington's patronizing a prostitute statute, RCW 9A.88.110(1)(b). ("A person is guilty of patronizing a prostitute if . . . [h]e . . . agrees to pay a fee to another person pursuant to an understanding that in return therefor such person will engage in sexual conduct with him.") And the City cites over two dozen other state statutes that contain similar language.

5

In Blake, police arrested the defendant and found a bag of methamphetamine in the coin pocket of her jeans. 197 Wn.2d at 174. The State charged her under former RCW 69.50.4013(1) (2015), which made it " 'unlawful for any person to possess a controlled substance.' " Id. at 175-76. The defendant testified that she did not use methamphetamine, that a friend gave her the jeans, and that she did not know there were drugs in the pocket. Id. at 175.

Our Supreme Court framed the issue before it as "whether the legislature possesses the power to punish [a person] for innocent conduct—or, more accurately, nonconduct—without proving any mental state at all." Blake, 197 Wn.2d at 176-77. The court determined that it does not. Id. at 182-83. And it held that former RCW 69.50.4013(1) violates due process because it criminalized "unknowing, and hence innocent, passivity and therefore 'has an insufficient relationship to the objective of' regulating drugs." Id. at 186 (quoting City of Seattle v. Pullman, 82 Wn.2d 794, 802, 514 P.2d 1059 (1973)).

The Supreme Court listed examples of innocent and passive nonconduct that the former drug possession statute could criminalize:

> "[A] letter carrier who delivers a package containing unprescribed Adderall; a roommate who is unaware that the person who shares his apartment has hidden illegal drugs in the common areas of the home; a mother who carries a prescription pill bottle in her purse, unaware that the pills have been substituted for illegally obtained drugs by her teenage daughter, who placed them in the bottle to avoid detection."

Blake, 197 Wn.2d at 183 (quoting State v. A.M., 194 Wn.2d 33, 64 n.13, 448 P.3d 35 (2019) (McCloud, J., concurring)). It also analogized the defendant's nonconduct to an ordinance that criminalized " 'accompanying a child during

6

curfew hours.' " Id. at 182. That ordinance unconstitutionally punished innocent nonconduct because " 'any minor under the age of 18 could be arrested for standing or playing on the sidewalk in front of his home at 10:01 p.m. on a warm summer evening.' " Id. (quoting Pullman, 82 Wn.2d at 795).

Unlike the former drug possession statute in Blake, former SMC 12A.10.040(A)(2) does not punish passive nonconduct. It punishes the affirmative act of agreeing to exchange sexual conduct for money. Nor is an agreement to exchange sex for money wholly innocent conduct. See City of Seattle v. Rodriguez, 15 Wn. App. 2d 765, 770, 477 P.3d 509 (2020), review denied, 197 Wn.2d 1008, 484 P.3d 1265 (2021).

In Rodriguez, the defendant texted an undercover officer asking for sex. 15 Wn. App. 2d at 767-68. After meeting with her, the officer asked the defendant what he was looking for. Id. at 768. He replied, " 'Just sex,' " and the officer responded, " 'Okay, $80.' " Id. The defendant agreed. Id. A jury convicted the defendant under former SMC 12A.10.040(A)(3) (2015),[4] which prohibited " 'solicit[ing] or request[ing] another person to engage in sexual conduct with him or her in return for a fee.' " Id. at 768-69. The defendant argued that the ordinance criminalized innocent conduct protected by the First Amendment to the United States Constitution. Id. at 770. We disagreed:

> [Former] SMC 12A.10.040 adequately defines criminal conduct as
> soliciting another to engage in sexual conduct in return for a fee.

---

[4] Our analysis of Rodriguez cites the 2015 version of SMC 12A.10.040. All other citations throughout this opinion are to the 2017 version of the ordinance.

> This clearly proscribes prostitution. The First Amendment . . . does not protect prostitution.

Id. We reasoned that a defendant need not commit an overt act to violate the law; merely offering to engage in sexual conduct for a fee amounts to criminal activity. Id.; see City of Yakima v. Emmons, 25 Wn. App. 798, 801-02, 609 P.2d 973 (1980).[5]

Sharma argues that Rodriguez "is no longer good law." He claims that Rodriguez relies on State v. Schmeling, 191 Wn. App. 795, 801, 365 P.3d 202 (2015), which Blake "effectively overruled." See Rodriguez, 15 Wn. App. 2d at 770. But Rodriguez relies on Schmeling only for the well established concept that " 'the legislature has the authority to create strict liability crimes that do not include a culpable mental state.' " Rodriguez, 15 Wn. App. 2d at 770 (quoting Schmeling, 191 Wn. App. at 801 (citing State v. Bradshaw, 152 Wn.2d 528, 532, 98 P.3d 1190 (2004); State v. Anderson, 141 Wn.2d 357, 361, 5 P.3d 1247 (2000); State v. Rivas, 126 Wn.2d 443, 452, 896 P.2d 57 (1995))). Blake did not hold otherwise. Indeed, our Supreme Court declined to review Rodriguez two months after it issued Blake. See Rodriguez, 197 Wn.2d at 1008 (denying

---

[5] Sharma also argues that former SMC 12A.10.040(A)(2) is unconstitutional as applied because he told the officers who arrested him that he was just enjoying some " 'dirty' talk" and that he "did not intend to go anywhere with her or give her any money for sex." According to Sharma, the First Amendment protects such "joking," "idle," and "dirty" talk. But the record does not show that Sharma was joking or engaged in idle talk. He told the arresting officers that he "was getting turned on" by a "beautiful woman talking to me dirty like that," but that he committed no crime because he "didn't go with her nowhere," "did not exchange any money," and told Fitzgerald, "I'm not going to do any right now." Sharma ignores the testimony that he had no money to give, asked Fitzgerald for her phone number, and agreed to meet her later when he had the $20.

review April 28, 2021); Blake, 197 Wn.2d at 170 (filed February 25, 2021). Rodriguez remains "good law."

In the alternative, Sharma argues Rodriguez is distinguishable from his case because the defendant in Rodriguez "committed an overt act by going to the undercover officer's apartment and handing her $80," while "Mr. Sharma committed no overt act." But Sharma did commit an act. He agreed to pay $20 in exchange for sexual conduct with Fitzgerald. The agreement itself is an act that violates the law. Former SMC 12A.10.040(A)(2); City of Yakima v. Emmons, 25 Wn. App. 798, 801, 609 P.2d 973 (1980); City of Seattle v. Ross, 77 Wn.2d 797, 798, 467 P.2d 177 (1970).

Because former SMC 12A.10.040(A)(2) punishes conduct that bears a reasonable and substantial relation to the objective of regulating prostitution, it does not violate due process. We reverse and remand for the superior court to consider Sharma's constitutional and sufficiency claims raised in his appeal.

_____
Brunner, J

WE CONCUR:

_____        _____
Chung, J.                                Dwyer, J.